No. 82-140

IN THE SUPREME COURT OF THE STATE OF MONTANA

1983

_____

BRONKEN'S GOOD TIME COMPANY,

Plaintiff and Respondent,

-vs-

J. W. BROWN & ASSOCIATES,

Defendant and Appellant.

_____

Appeal from:  District Court of the Eighteenth Judicial District,
In and for the County of Gallatin,
The Honorable W. W. Lessley, Judge presiding.

Counsel of Record:

For Appellant:

Drysdale, McLean & Screnar, Bozeman, Montana

For Respondent:

Lyman H. Bennett, III, Bozeman, Montana

_____

Submitted:   January 27, 1983

Decided:   April 14, 1983

Filed: APR 14 1983

*Ethel M. Harrison*

_____
Clerk

Mr. Justice Frank B. Morrison, Jr., delivered the Opinion of the Court:

This is an appeal from an order of the Eighteenth Judicial District Court, Judge W.W. Lessley presiding, awarding damages to Bronken's Good Time Company, a wine distribution business, based on breach of a distributorship contract by J. W. Brown & Associates, a wine brokerage firm.

On May 4, 1979, Bronken's Good Time Company (Bronken) was appointed as exclusive distributor of wines marketed by J. W. Brown & Associates (Brown) for the four-county area consisting of Gallatin, Park, Sweet Grass and Meagher counties. The agreement between Bronken and Brown contained no provision for its termination. Bronken began distributing Brown wines in July, 1979.

On February 7, 1980, Brown informed Bronken the agreement would be terminated as of March 1, 1980. Termination was later postponed until April 1, 1980.

Bronken brought this action against Brown claiming that the agreement had been terminated prematurely and without cause. Trial was before the District Court sitting without a jury. The District Court concluded that the appointment of Bronken by Brown was an enforceable, executory contract binding upon both parties for a reasonable time, that Bronken was terminated without cause, and that a reasonable time for an appointment as an exclusive distributor was twenty-four months. Damages were assessed in the sum of twenty-four thousand six hundred seventy-eight and 60/100ths dollars ($24,678.60) and included sixteen thousand seven hundred seventy-nine dollars ($16,779.00) in lost profit for a seventeen-month period, five thousand dollars ($5,000.00) in personnel time spent explaining termination of the distributorship to Bronken's customers, and two thousand

eight hundred ninety-nine and 60/100ths dollars ($2,899.60) for unsold inventory of Brown wines which were either destroyed or consumed by Bronken.

Brown appeals, raising four issues.

We affirm in part and reverse in part, vacating the District Court's order and remanding for consideration in light of this opinion.

First Brown contends that the District Court erred by finding that the distributorship agreement was wrongfully terminated because a reasonable time of twenty-four months had not passed. Since Bronken had made a relatively insubstantial investment in distributing Brown's wines and had not undertaken any advertising or promotion for Brown's wines, Brown believes the distributorship agreement should have been terminable at will upon reasonable notice.

Whether distributorship agreements containing no express provision for duration or termination may be terminated at will or only after a reasonable time has expired, has not been decided by this Court. However, this question has been addressed by courts in other jurisdictions and is discussed at length in Annotation, 19 A.L.R.3d 196, "Termination by Principal of Distributorship Contract Containing No Express Provision for Termination."

Our review of this annotation and the cases discussed therein, reveals that two rules have evolved based on divergent, somewhat inconsistent rationales. One provides that such agreements are terminable at will by either party; reasonable notice may or may not be required. The other, sometimes referred to as the "modern majority rule", provides such agreements are terminable at will only after a lapse of a reasonable time and upon reasonable notice.

3

While it appears that both rules are still viable, we adopt the modern majority rule. The record discloses that the instant distributorship agreement was analogous to an employment or agency contract where the employee or agent provided consideration in addition to his or her mere services.

Williston explains:

" . . . for the purpose of determining the duration of the relation between the parties and the power to terminate it, [a true sales agency contract and a sales and distribution contract] are so substantially similar that cases of either type are authoritative on this point for the other . . .

"Usually, in these situations, the agent or buyer, as the case may be, is doing more than merely offering to render services or to pay the price for the goods. It is at least expected and understood, and, in fact, frequently expressly provided in the contract, that he is to make a substantial investment and to build up or maintain a business establishment for the distribution of the manufacturer's products . . .

"[Therefore,] where the agreement contains no provision whatever for its termination[:]

"Quite properly, this has frequently been held an enforceable executory contract, binding upon each party for a reasonable time . . .

"It is the settled law of agency that if the agent or employee furnishes a consideration in addition to his mere services, he is deemed to have purchased the employment for at least a reasonable period where the duration of employment is not otherwise defined." 9 Williston, Contracts (3rd ed.), Section 1017A, pp. 138-141, 150-151.

The record here indicates Bronken did more than just distribute wines -- he purchased trucks for distribution, rented and constructed warehouse space, hired staff, maintained an inventory of Brown wines, and assumed the risk of destruction of the wines. Although testimony indicates the percentage of Bronken's sales and inventory for which Brown's wines accounted was relatively low and the advertising on Bronken's trucks promoted wines other than those carried by Brown, that evidence does not negate the

4

District Court's finding, which is based on substantial credible evidence, that Bronken provided consideration in addition to his mere services, and that he was therefore entitled to distribute Brown wines for a reasonable time.

We hold that, where a distributorship agreement contains no provision for its termination and the distributor has made substantial investment in establishing or furthering the distributorship, the agreement may be terminated only after a reasonable time has lapsed and reasonable notice of termination is given.

As to what is a reasonable period of time in a given situation, we will defer to the judgment of the trier of fact. Absent an abuse of discretion, this Court will not interfere. We find no abuse of discretion in the case at bar. It is apparent the District Court has considered the testimony and the extent of Bronken's investment and arrived at a considered decision.

Brown next argues that the District Court erred by finding that the distributorship agreement was terminated without cause. This claim is without merit. The record does not support a finding of termination for cause. It is evident Brown's performance standards were ambiguous and not related to Bronken in an acceptable or definitive manner. While Bronken might have been more aggressive in his sales approach, the evidence does not compel a finding that the performance was inadequate and termination justified.

The third issue presented by Brown regards Bronken's failure to mitigate damages. Brown bases his contention on testimony that Bronken refused Brown's offer to repurchase his remaining inventory and instead either sold the wines for a loss or consumed or destroyed the remainder.

The rule in Montana is that a nondefaulting party in a contractual arrangement must act reasonably under the circumstances so as not to unnecessarily enlarge damages caused by default. Town Pump, Inc. v. Diteman (1981), ____ Mont. ____, 622 P.2d 212, 38 St.Rep. 54, [indemnity action developing mitigation of damages rule from Business Finance Co., Inc. v. Red Barn, Inc. (1973), 163 Mont. 263, 517 P.2d 383, and Brown v. First Federal Sav. and L. Ass'n. of Great Falls (1969), 154 Mont. 79, 460 P.2d 97.]

Whether the injured party violated his duty to mitigate damages is a question for the trier of fact when there is conflicting evidence. Fairway Builders, Inc. v. Malouf Towers Rental Co., Inc. (1979), 124 Ariz. 242, 603 P.2d 513. Our function then is to review the record to determine if there is substantial credible evidence to support the trial court's finding.

Since the trial court's order and memorandum in support thereof does not include any findings regarding Bronken's duty to mitigate damages or the reasonableness of his actions in consuming or destroying wine he did not sell, we vacate the damage award and remand for further consideration of this issue.

As a final matter, Brown contends the assessed damages were speculative and therefore are improper under section 27-1-311, MCA. This Court cannot agree with Brown's contention that the damages assessed were speculative. The exhibits and Bronken's testimony provide a basis for estimating loss of profits and the damages incurred as a result of the breach.

While we cannot agree the damages are speculative, the record indicates that Bronken presented conflicting evidence regarding appropriate computation of his loss of profits.

Exhibit 7 purportedly computes loss profits on a gross, per month basis and was used by the District Court in fixing damages. However, Bronken testified that there were expenses associated with the sale of Brown wines that are not reflected in Exhibit 7. Bronken acknowledged that labor, gas, insurance, accounting, etc., expenses were not represented in the exhibit.

The general rule in breach of contract actions is that where overhead or operating expenses are saved as a result of the breach, the proper measure of recovery is net, not gross, profit, and where such expenses are constant, and no savings occurs, the rule is otherwise. Compare Covington Bros. v. Valley Plastering, Inc. (1977), 93 Nev. 355, 566 P.2d 814, and P & M Vending Co., Inc. v. Half Shell of Boston, Inc. (1978), 41 Colo.App. 78, 579 P.2d 93.

Here it was improper to grant recovery without considering that there were expenses associated with the sale of Brown wines.

Therefore, we vacate the damage award and remand this issue for reconsideration by the District Court.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices