792 P.2d 315

Bill JONES and Bill Jones Distributors, Inc., an Idaho corporation, Plaintiffs–Respondents,

v.

PANHANDLE DISTRIBUTORS, INC., an Idaho corporation, Defendant–Appellant.

Bill JONES and Bill Jones Distributors, Inc., an Idaho corporation, Plaintiffs–Appellants,

v.

PANHANDLE DISTRIBUTORS, INC., an Idaho corporation, Defendant–Respondent.

Nos. 16953, 17317.

Supreme Court of Idaho.

Feb. 28, 1990.

On Denial of Rehearing June 20, 1990.

granted a new trial on the issue of compensatory damages, but not on the issue of liability. Both Panhandle and Jones appealed, raising issues which we have consolidated on appeal for review. Panhandle contends that the trial court erred in denying its motion for new trial on liability, and its j.n.o.v. motion on the compensatory damage issue. Jones argues that the trial court erred by (1) granting Panhandle's motion for new trial on compensatory damages, and (2) granting Panhandle's motion for j.n.o.v. on the punitive damages issue.

Eismann & Kosonen, Coeur d'Alene, for appellant Panhandle Distributors, Inc. D. Samuel Eismann argued, Coeur d'Alene.

Verby, Elsaesser & Jarzabek, Sandpoint, for respondent Jones. Steven C. Verby argued, Sandpoint.

BAKES, Chief Justice.

Both plaintiff and defendant appeal a trial court's granting of a partial j.n.o.v. and new trial on the issue of damages for breach of a beer distribution franchise sale agreement. The franchise buyer, plaintiff Bill Jones Distributors, Inc. (Jones), alleged that the franchise seller, defendant Panhandle Distributors, Inc. (Panhandle), breached the written sales contract in several respects. After a seven-day trial, the jury found that Panhandle breached the contract with Jones. In its special verdict the jury awarded compensatory damages of $162,289.24 and punitive damages of $10,700.00. Panhandle moved for judgment notwithstanding the verdict (j.n.o.v.) or, in the alternative, new trial on all issues. The trial court granted j.n.o.v. with respect to the punitive damage award and

## I

Panhandle and Jones are both beer distributors in northern Idaho. Panhandle is run by Jim Crowley, its chief executive officer; Jones is run by Bill Jones. On November 9, 1978, these two companies entered a written contact for the sale to Jones of Panhandle's right to distribute Schlitz and Miller Brewing products in Bonner and Boundary Counties. The sale price was $10,000. Prior to entering this agreement, Jones had acted as Panhandle's subdistributor of Schlitz and Miller products in Bonner and Boundary Counties, the area covered by the sales contract. At trial the evidence was presented which showed that before taking on Jones as a sub-distributor, Coeur d'Alene-based Panhandle had difficulty distributing Schlitz and Miller products in the two counties. Sandpoint-based Jones, however, successfully sub-distributed these breweries' products for Panhandle.

The contract contained a "condition precedent" which stated that both Miller and Schlitz brewing companies had to approve in writing the sale of franchise right for their respective products. If *either* brewery did not approve in writing then the contract would terminate.[1] Thus, the "con-

1. The following is the condition precedent clause contained in the contract:
   CONDITION PRECEDENT: It is further understood and agreed that the consummation of this agreement is conditional upon the written consent to, and approval of, both of the above-named brewing companies; the obligation and responsibility for obtaining the respective consents being solely with the Seller, who agrees to diligently pursue the receipt of the written consents as soon as reasonably possible upon the execution of this agreement. In the event of the failure of either of the above-named brewing companies to give consent to, and approval of, this agreement, this agreement shall be immediately terminated

dition precedent" in fact amounted to two conditions precedent, *i.e.*, the consent of two different companies. The contract also stated, "The obligation and responsibility for obtaining the respective consents [are with Panhandle], who agrees to diligently pursue the receipt of the written consents as soon as possible...."

The conditions precedent to the conclusion of the contract never occurred. Schlitz rejected the transfer of the franchise distribution rights from Panhandle to Jones. Miller did not reject the transfer, but did not give its consent to it either. Panhandle then resumed the distribution of Schlitz and Miller products in Bonner and Boundary Counties and returned the $10,000 sale price to Jones.

Jones sued Panhandle for breach of the sale contract and urged two bases for the alleged breach. First, Jones argued that Panhandle breached the contract by failing to diligently pursue approval of the transfer as required by the contract. Second, Jones argued that Panhandle, through Crowley, actually prevented the fulfillment of the contract's performance by directly influencing Schlitz's disapproval and Miller's nonconsent in order to prevent either of the conditions precedent from occurring. Jones presented some evidence to show that Crowley influenced the breweries to either disapprove the transfer or take no action. For example, regarding the Schlitz consent, a former Schlitz representative, Ray Carolin, testified that Crowley had asked him and his boss, Dale Lippert, to disapprove Jones's application to become a distributor. With regard to the Miller Brewing consent, there was no testimony offered by Jones to show that Crowley had done anything to dissuade Miller from consenting to the transfer. However, Miller representative Swede Wick did testify that he had heard of Crowley's intention not to go through with the sale of Panhandle's distribution rights to Jones and of Crowley's request to Schlitz representatives to disapprove Jones's application to Schlitz.

However, Wick did not testify that Crowley had made any such request of Miller Brewing to disapprove the transfer and sale, or that Miller's failure to give its written consent resulted from Crowley's influence on Miller.

Jones argues on appeal that the evidence demonstrates both that Crowley acted covertly in order to block the giving of the consents, and that Crowley failed to "diligently pursue the receipt of the written consents as soon as reasonably possible," as required by the contract. For example, Jones points out that during the several months after entering into the contract Crowley sent only one letter to Miller on behalf of Jones. Additionally, Jones produced an expert witness, Paul Pohle, who testified that because of Jones's proven success as a sub-distributor of Schlitz, Miller and other brewery products in Bonner and Boundary Counties, it was his opinion that both Schlitz and Miller would have approved the transfer but for Crowley's breach of contract.

For his part, Crowley denied having done anything to influence Schlitz's disapproval or Miller's nonconsent and asserted that he did all that he could have done to secure approval for the transfer of distribution rights. Crowley theorized that Schlitz rejected Jones as a distributor due to Jones's unacceptable performance as a sub-distributor.

The jury returned a verdict in favor of Jones for both compensatory and punitive damages.

## II

The first issue we address is Panhandle's claim that the trial court committed error by improperly refusing to grant Panhandle j.n.o.v. on the issue of liability. In making a motion for j.n.o.v., a defendant admits the truth of all of plaintiff's evidence and every legitimate inference that could be drawn therefrom in a light most

---

and any or all of the consideration paid into the attorney's trust account as provided shall be immediately refunded to the Buyer in the entirety, in which event the Buyer shall be

relieved of the obligation to pay any of the attorney's fees as hereinafter otherwise provided.

favorable to plaintiff. *Quick v. Crane*, 111 Idaho 759, 727 P.2d 1187 (1986). A trial court may not make its own findings of fact but must construe the evidence in a light most favorable to the non-moving party and determine whether there is sufficient evidence to create an issue of fact. *Id.* Whether j.n.o.v. should be granted is a question of law, and on such questions, parties are entitled to full review by an appellate court without special deference to the views of the trial court. *Id.*

We are faced with a unique factual circumstance in this case because the contract essentially creates two conditions precedent to its performance. For Jones to recover from Panhandle on a breach of contract theory, regardless of whether the theory is based on Panhandle's alleged failure to use due diligence to procure consents or its alleged active prevention of approval, or some combination of the two, Jones must prove that Panhandle's contractual breach materially contributed to the actual non-occurrence of *each* of the two conditions precedent. It is not enough for Jones to prove that Panhandle breached its duty with respect to only one condition precedent, even though *that* condition then would be excused, because final performance of the contract would not occur until *both* conditions precedent were met. See RESTATEMENT (SECOND) OF CONTRACTS §§ 225, 245 (1979); 5 *Williston on Contracts* § 677A (1961). Because it is alleged that Panhandle breached each condition precedent in two respects, we must determine whether there is sufficient evidence to support the jury's finding that Panhandle's breach caused the non-performance of each condition precedent.

Panhandle argues, citing approving language in the trial court's memorandum decision in ruling on the j.n.o.v. motion, that it is "undisputed that neither Crowley nor anyone else acting on the behalf of Panhandle ever did anything to dissuade, discourage, or prevent the consent from the Miller Brewing Company." As such, Panhandle contends, it did not breach the contract in any manner because the contract itself ceased to exist because one of the two conditions precedent, *i.e.,* Miller's approval,

never occurred. However, the trial court found that there was sufficient evidence, *e.g.,* the mailing of only one letter to Miller on behalf of Jones, to create an issue of fact for the jury as to whether Panhandle breached its express contractual duty to use diligence in order to "procure consents." The trial court wrote, "Though Mr. Crowley testified that he did all he was aware of to comply with this 'obligation,' the evidence was substantial that he did not."

■ We agree with the trial court's assessment of the evidence on the issue of Panhandle's lack of due diligence. The trial court properly denied Panhandle's j.n.o.v. motion on the issue of whether Panhandle breached its express contractual duty to act with due diligence to procure the consents of both Miller and Schlitz.

### III

Panhandle further asserts that the liability issue should be retried with the compensatory damage issue because it would be too difficult to separate the two and would confuse the jury at the new trial on damages. We recently addressed the question of whether a trial court should grant only a limited retrial on the issue of damages, rather than both liability and damages. In *Smallwood v. Dick*, 114 Idaho 860, 761 P.2d 1212 (1988), we wrote:

> The decision on limiting the new trial [to damages] appropriately rests in the discretion of the trial judge. It is presumed that in passing upon the motion [for new trial on the limited issue of damages] he has weighed the evidence and the possibility of prejudice to the defendant. His decision will not be reversed on appeal unless an abuse of discretion is shown. (Citations omitted.)

> Such an abuse is shown when the damages are inadequate, the record discloses that the issue of liability is close, and other circumstances indicate that the ver-

754

dict was probably the result of prejudice, sympathy, or compromise or that for some other reason the liability issue has not been determined.

114 Idaho at 864, 761 P.2d at 1216; *Leipert v. Honold*, 39 Cal.2d 462, 247 P.2d 324, 327 (1952).

■ As discussed below, we conclude that the trial court acted within the bounds of its discretion in granting new trial solely on the issue of compensatory damages because it found the jury's award so excessive that it could only have been the result of "passion or prejudice." That leaves only the question of whether the record discloses that the issue of liability was so close that a new trial on both liability and damages should have been granted. *Smallwood v. Dick*, 114 Idaho 860, 761 P.2d 1212 (1988).

The trial court's decision denying Panhandle's motion for new trial on the liability issue was written before the *Smallwood* decision and therefore understandably it does not refer to whether the liability issue was "close." However, after reviewing the record and the trial court's memorandum decision, we conclude that the liability issue was *not* close, at least with respect to Panhandle's breach of contract through its failure to diligently pursue the receipt of written consents from the two breweries. We agree with the trial court when it wrote, "Though Mr. Crowley testified that he did all he was aware of to comply with this 'obligation,' [to diligently procure consents,] the evidence was substantial that he did not."

Accordingly, we conclude that the trial court did not abuse its discretion in denying Panhandle's motion for new trial on the liability issue even though it ordered a new trial on compensatory damages.

### IV

We next address the issues raised in Jones's appeal. In the first issue Jones

**2.** I.R.C.P. 59(a) provides in pertinent part:
A new trial may be granted to all or any of the parties and on all or part of the issues in an action for any of the following reasons:

. . . . .

alleges that the trial court erred in granting new trial on compensatory damages. After the jury rendered its verdict Panhandle made motions for, *inter alia*, new trial on the issue of compensatory damages pursuant to I.R.C.P. 59(a). After hearing counsels' arguments, the trial court stated that, "any award of damages made by the Court would have been far less than the award made, and it would have been sufficiently less to convince me that the award of compensatory damages could only be the result of 'passion or prejudice' in the language of Rule 59(a)(5)."[2] The trial court also concluded that a new trial was warranted pursuant to I.R.C.P. 59(a)(7) because there were errors of law committed in certain erroneous instructions submitted to the jury on the issue of damages.

■ On a motion for new trial, a trial court has broad discretion and may weigh the evidence and credibility of the witnesses. *Quick v. Crane*, 111 Idaho 759, 727 P.2d 1187 (1986). Unlike the rule which applies to motions for directed verdict or j.n.o.v., a trial court may set aside the jury's verdict and grant a new trial pursuant to I.R.C.P. 59(a) even though there is substantial evidence to support the verdict. *Id.* A trial court is not required to view the evidence in a light most favorable to the non-moving party. *Id.*

In *Quick v. Crane, supra,* we reiterated the rule that a trial court must follow when ruling on a motion made pursuant to I.R.C.P. 59(a)(5):

Where a motion for a new trial is premised on inadequate or excessive damages, the trial court *must* weigh the evidence and then compare the jury's verdict to what he would have given had there been no jury. If the disparity is so great that it appears to the trial court that the

**5.** Excessive damages or inadequate damages, appearing to have been given under the influence of passion or prejudice.

. . . . .

**7.** Error in law, occurring at the trial. . . . .

award was given under the influence of passion or prejudice, the verdict ought not to stand. It need not be proven that there was in fact passion or prejudice nor is it necessary to point to such in the record. The appearance of such is sufficient. A trial court is not restricted to ruling a verdict inadequate or excessive "as a matter of law." [Citation omitted.] Additionally, the rule that a verdict will not be set aside when supported by substantial but conflicting evidence has no application to [a] trial court ruling upon a motion for a new trial.

111 Idaho at 768, 727 P.2d at 1196; *Dinneen v. Finch,* 100 Idaho 620, 625–26, 603 P.2d 575, 580–81 (1979). On appeal, we will not reverse a trial court's order granting or denying a motion for new trial "unless the court has *manifestly* abused the wide discretion vested in it." 111 Idaho at 770, 727 P.2d at 1198. "While we must review the evidence, we are not in a position to 'weigh' it as the trial court." *Id.*

■ After reviewing the evidence, we are not convinced that the trial court committed a "manifest abuse of [its] wide discretion" when it found that the jury's award was excessive and could have only resulted from passion or prejudice, therefore justifying a grant of a new trial on compensatory damages pursuant to I.R.C.P. 59(a)(5). The trial court's memorandum opinion demonstrates that it properly applied the standards set out in our most recent cases. *Dinneen v. Finch,* 100 Idaho 620, 603 P.2d 575 (1979); *Quick v. Crane,* 111 Idaho 759, 727 P.2d 1187 (1986); *Sanchez v. Galey,* 112 Idaho 609, 733 P.2d 1234 (1987).

The trial court's order granting Panhandle's motion for a new trial on compensatory damages is affirmed.

## V

■ Next, we consider the second issue raised by Jones concerning whether the trial court properly granted Panhandle's j.n.o.v. motion with respect to the jury's punitive damage award. While punitive damages may be recovered in a contract action, *Cheney v. Palos Verdes Investment*

*Corporation,* 104 Idaho 897, 665 P.2d 661 (1983), they are "not favored in the law and therefore should be awarded only in the most compelling circumstances. They are to be awarded cautiously and within narrow limits." 104 Idaho at 905, 665 P.2d at 669. In order to justify submitting a punitive damages issue to the jury, a plaintiff must show that defendant acted in a manner that was "an extreme deviation from reasonable standards of conduct, and that act was performed by the defendant with an understanding of or disregard for its likely consequences." *Id.* "The justification for punitive damages must be that the defendant acted with an extremely harmful state of mind, whether that state of mind be termed 'malice, oppression, fraud or gross negligence' ... 'malice, oppression, wantonness' ... or simply 'deliberate or willful.' *Id.* (Citations omitted.) "While no concrete formula for an award of punitive damages will control, the discretion of the trial judge will continue to be exercised within the[se] general advisory guidelines laid down by this Court in the past." 104 Idaho at 904, 665 P.2d at 668.

In the event that the trial court concludes, in the exercise of its discretion, that the evidence does not demonstrate that the defendant acted in a manner that was "an extreme deviation from reasonable standards of conduct," or that the defendant "acted with an extremely harmful state of mind, whether that state of mind be termed 'malice, oppression, fraud or gross negligence,'" then the trial court should not submit the issue of punitive damages to the jury. *Cheney v. Palos Verdes Investment Corp.,* 104 Idaho 897, 665 P.2d 661 (1983); *Quedding v. Arisumi Bros., Inc.,* 66 Haw. 335, 661 P.2d 706, 710 (1983) ("[I]f the evidence presented at trial is insufficient to support a finding that the 'wrongdoer' acted wantonly, oppressively, or maliciously, the issue of punitive damages may not be presented to the jury."); *Alyeska Pipeline Service Co. v. O'Kelley,* 645 P.2d 767, 774 (Alaska 1982) ("[W]here there is no evidence that gives rise to an inference of actual malice or conduct sufficiently outrageous to be deemed equivalent to actual

**756**

malice, the trial court need not submit the punitive damages issue to the jury.").

■ However, the trial court considered it a "better practice" to first submit the question of punitive damages to the jury, reserving until afterward the question of whether or not the evidence submitted by the plaintiff was sufficient to meet the *Cheney v. Palos Verdes* standard. After the jury awarded Jones $10,700 in punitive damages the trial court rejected the jury's verdict, stating, "I cannot agree with the verdict of the jury on ... the award of ... punitive damages." The trial court could find "no substantial evidence to support an award of punitive damages," stating that it is "undisputed that neither Jim Crowley nor anyone else acting on behalf of Panhandle Distributors, Inc., ever did anything to dissuade, discourage or prevent the consent from the Miller Brewing Company." Since the consent from both the Schlitz and Miller Brewing Companies was a condition precedent to the contract having viability, the trial court concluded that it didn't matter if Crowley's conduct toward the Schlitz Brewing Company was egregious if it was *not* egregious as to Miller Brewing Company. Accordingly, the trial court concluded that "I find that the motion for judgment notwithstanding the verdict should be granted as to the award of punitive damages."

Given the unique factors in this case (the dual conditions precedent) we conclude that the trial court did not abuse its discretion when it concluded that, given the lack of egregious conduct on the part of the defendant Panhandle concerning the Miller Brewing Company's consent, the evidence as a whole precluded the award of punitive damages in this case. *Soria v. Sierra Pacific Airlines, Inc.,* 111 Idaho 594, 726 P.2d 706 (1986). Therefore we affirm the trial court granting of the j.n.o.v. with regard to punitive damages.[3]

The judgment of the district court is affirmed. No costs or attorney fees on appeal.

JOHNSON, BOYLE and McDEVITT, JJ., concur.

BISTLINE, Justice, dissenting.

## INTRODUCTION

A close reading of the district court's written decision on Panhandle's post-judgment motions, after first becoming well-acquainted with the state of the record, draws me inescapably to the conclusion that the district court's order of a new trial on damages and j.n.o.v. on the punitives award is improper. A majority of this Court has failed to see the light, so I have taken it upon myself to publish the light. This dissent is divided into three parts. I first discuss the new trial on damages. I then turn in Part II to the district court's *sua sponte* determinations of error. In Part III, I discuss the district court's j.n. o.v. on the punitives awarded by the jury.

## I. NEW TRIAL ON THE ISSUE OF COMPENSATORY DAMAGES

The majority affirms the trial judge's determination that a new trial on the issue of compensatory damages is appropriate. This is improper, because the trial court's

---

3. By affirming the trial court we do not intimate our approval of the trial court's statement that it is "the better practice [for trial courts] to submit the question [of punitive damages] to the jury in all but the most obvious cases ...," and to thereafter overrule the jury's verdict by a judgment notwithstanding the verdict if the trial court thereafter concludes that the defendant's conduct was not sufficiently egregious to meet the threshold requirements of *Cheney v. Palos Verdes Investment Corp.,* 104 Idaho 897, 665 P.2d 661 (1983). In order to assert a punitive damage claim, a plaintiff must meet a certain threshold by demonstrating that a defendant acted in a manner that was "an extreme deviation from reasonable standards of conduct," or "acted with an extremely harmful state of mind, whether that state of mind be termed 'malice, oppression, fraud or gross negligence....'" *Id.; Quedding v. Arisumi Bros., Inc.,* 66 Haw. 335, 661 P.2d 706 (1983). While "[t]he decision of whether to submit the question of punitive damages to the trier of fact rests within the discretion of the trial court," *Soria v. Sierra Pacific Airlines, Inc.,* 111 Idaho 594, 611, 726 P.2d 706, 723 (1986), the failure to exercise that discretion until after the jury has returned its verdict may well interject issues and evidence into the case which at best are unnecessary and confusing, and at worst may well be extremely prejudicial.

memorandum decision and order[4] contains no sufficient reasons for the new trial. The trial judge did refer to the correct standard when considering a new trial on damages. The district court memorandum decision is a momentous undertaking, beginning with a thorough review and analysis of this Court's opinions in *Sanchez v. Galey,* 112 Idaho 609, 733 P.2d 1234 (1986); *Quick v. Crane,* 111 Idaho 759, 727 P.2d 1187 (1986); *Black v. Reynolds,* 109 Idaho 277, 707 P.2d 388 (1985); *Dinneen v. Finch,* 100 Idaho 620, 603 P.2d 575 (1979); and *Deshazer v. Tompkins,* 93 Idaho 267, 460 P.2d 402 (1969). However, the lessons contained in these precedents were not applied to this case. What really drives Judge Haman to order a new trial is his misconception of the enormity of damages that could flow from such a small contract. As he stated in his order:

> How can the breach of a contract for the sale of the right to distribute beer, which rights were valued at $10,000, or less, by the parties to the contract, cause damages amounting to $162,289.24?

That is the bothersome part of this case. R., 308. Quite often, contracts that represent small amounts on paper can cause huge losses when they fall through. That is the reason why a comparison of the damages awarded to the amount of consideration paid in a contract is not the appropriate standard for allowing a new trial on the issue of damages. The appropriate standard for allowing a new trial on 59(a)(5) grounds, the grounds relied upon by Judge Haman, is whether the difference between what the judge would have awarded in the case, and what the jury did in fact award, is sufficiently great for the judge to be concerned that the jury's award appears to have been the result of passion or prejudice.[5] *Quick,* 111 Idaho at 768, 727 P.2d at 1196.

Judge Haman did not know what he would have awarded in this case. In his order, he states that he "cannot determine with precision the amount of damages which would have been awarded by the Court if the trial were had without a jury." R., 315. Not even a ballpark figure was provided by the judge. However, this was a case arising out of a contract with damages that were ascertainable with a modicum of mathematical endeavor. No reasons are discernible from the record or the briefs why Panhandle would claim excessive damages were awarded under the appearance of passion or prejudice without a supporting brief that detailed a computation of the damages allowable, to be measured against the damages awarded. This information is a necessary predicate in order to reasonably pursue Panhandle's contention that the damages award was indeed excessive. Had Panhandle provided the court with this information, perhaps the district court then could have been justifiably convinced that the jury finding of damages was so far above what appeared to be sustainable that there was an appearance of passion or prejudice influencing the jury's damage award. However, Panhandle did not demonstrate anything pointing to any excess based on insufficiency of the evidence on the damage issue. In fact, Judge Haman, in ruling on the motion j.n. o.v., said the evidence, if accepted by the jury, did sustain the damage award. R., 316.

A very large problem with the trial court's opinion and its rulings on the defendant's post-judgment motions is that in thirty (fourteen inch-long pages) there was no information whatever which showed the damages which he would have allowed, a basic requirement of both *Quick* and *Dinneen.* Justice Donaldson, in his *Quick* opinion, quoted approvingly from *Dinneen:*

---

**4.** The district court's opinion in re: Motion for New Trial and Motion for Judgment Notwithstanding the Verdict, R., 289–319.

**5.** I note in passing that Panhandle pursued the passion or prejudice ground for new trial as if it was incumbent upon it to prove *actual* passion or prejudice. This was attempted through the submission of three affidavits, two of which

included post-verdict hearsay statements of jurors that in their view the damages award was excessive enough to show that the jury acted improperly and certain jurors were prejudiced against Panhandle. Needless to say, the district court correctly viewed the affidavits as improper and of no consequence.

When a trial judge goes through the same evaluative process [as the jury] of assigning a damage award to the parties upon a motion for a new trial under I.R.C.P. 59(a)(5), he draws upon his experiences with previous cases involving general damages and comes up with a figure he believes is fair and just. Obviously, he has a much better idea of what the scope and limitations on such damages may be. His figure of damages will often be different from that of the jury's.

*Quick*, 111 Idaho at 769, 727 P.2d at 1197, cited with approval by the district court. R., 303. Here, although the district court opinion showed a commendable awareness of much of which was written in *Quick*, the court failed miserably in following the *Quick/Dinneen* directives, notwithstanding that there was an extensive quote in the opinion which included the above language. Some twelve pages followed the above quotation from *Quick* before the court returned to the *Quick* directive that the trial judge draw upon his experiences with previous cases involving damages and "come[s] up with a figure he believes is fair and just." The predicate for that determination was, of course, that as the jury was hearing the evidence on damages, so, too, was the trial judge going through the same evaluative process. Unfortunately, the trial judge provided the parties, and in turn this Court, with just short of nothing:

> I cannot determine with precision [6] the amount of damages which would have been awarded by the Court if the trial were had without a jury.

. . . .

I do determine, however, that any award of damages made by the Court would have been far less than the award made, and it would have been sufficiently less to convince me that the award of compensatory damages could only be the result of 'passion and prejudice' in the language of Rule 59(a)(5).

R., 315, 316.

Judge Haman knows the jury was not influenced by passion or prejudice as far as the issue of liability is concerned,[7] yet he believes that the jury was improperly influenced in awarding damages: "[T]he award of compensatory damages could only be the result of 'passion or prejudice' in the language of Rule 59(a)(5)." R., 316. Judge Haman's order taken as a whole reveals that he simply could not agree with the jury's verdict:

> [S]uffice it to say that, in reviewing and weighing the evidence adduced during the trial, as required by Rule 59(a)(5), I.R.C.P., I cannot agree with the verdict of the jury on either the award of compensatory or punitive damages.

R., 314. Simple disagreement with a jury verdict is not enough, and the real reasons for the new trial (see below) are also not enough to support the judge's order.

## A. JURY INSTRUCTION 14

The district judge's order relied upon his own theretofore undiscovered errors in giving jury instruction 14 as justification for the grant of a new trial on damages:

> [T]he jury was instructed in a rather standard manner concerning damages (See Instruction No. 14),[8] that they could

---

6. *Quick* does not require precision in such circumstances.

7. "I cannot find that the jury was influenced by 'passion or prejudice' on the issue of liability." R., 315.

8. Jury instruction 14 instructed the jury that:
   If you decide for the Plaintiff on the question of liability with respect to its claim, then you must fix the amount of money that will reasonably and fairly compensate him for any of the following elements of damage which have been proved by the evidence to have resulted as a natural and ordinary consequence of the Defendant's breach:

1. Those losses and expenses which have occurred and which may fairly and reasonably be considered as arising in the usual course of things from the Defendant's breach of the contract and those losses and expenses which may reasonably be supposed to have been in the contemplation of both parties as a probable result of such breach when the contract was made which may include reasonable costs incurred to recover business lost.
2. The expenses, if any, which the Plaintiff reasonably incurred in anticipation of or preparation for performance of the contract.
3. The difference between the contract price for the sale of the property and the fair mar-

consider as elements of damage both lost profits, and the difference between the contract price and the fair market value of the property.

Instruction No. 14 correctly advised the jury as to the elements of damage which they could consider, and told the jury that whether any of such damages had been proved was for them to decide. *However, in hindsight, and having been given precious little assistance from the Defendant concerning jury instruction, I conclude that the instruction did not go far enough.*

For, while the instruction advised the jury that they could consider, as elements of damage, both lost profits and the difference between the contract price and the fair market value of the property involved, it did not advise them that they could not award both. The Plaintiff was certainly entitled to be made whole, but it is not entitled to be made doubly whole by receiving both the value of the property not received by reason of the breach of contract (which presumably could be used to purchase equivalent property) and net profits lost by reason of not receiving the property.

R., 309–10 (emphasis added). However, *neither* Panhandle's motion for j.n.o.v., *nor* its motion for new trial raised this specification of error. In fact, the court's conclusion that the jury had not been adequately instructed was not responsive to anything asserted in Panhandle's broad motion for a new trial. The court apparently believed that in instructing the jury it had committed prejudicial error. Yet it had received requested instructions from the parties, had held an instructions conference, had allowed the parties to register their objections to the instructions on the record, and had read the instructions to the jury, as well as sending out with the jury sets of those instructions.

Panhandle apparently realized that it was not well positioned to advance inadequacy of the instructions as grounds for a new trial, because Panhandle's objections were inadequate to preserve any issue as to instructions. Its requested instructions were only seven in number. The first four of those seven instructions were requested before the commencement of the trial, and the other three submitted when the trial was concluding.

Before the jury was instructed, the court met with counsel at an instructions conference. At its conclusion, and before the jury was brought in, the court allowed counsel to voice their objections to the instructions: [9]

MR. VERBY [for Jones]: Your Honor, I have no objection to the court's proposed instructions. I would have an objection for the court's failure to give Plaintiff's requested jury instruction number 43 and the Plaintiff's requested jury instruction number 44 essentially dealing with the computation of lost profits.[10]

I believe that those instructions set forth the law with regard to computation of lost profits, and I feel that the jury should be instructed in how to compute lost profits.

Other than that, your Honor, I have no other objections to the proposed instructions.

THE COURT: Thank you. Mr. Arney.

MR. ARNEY [for Panhandle]: Your Honor, as to the 20 instructions, or 21—

THE COURT: 21 total.

MR. ARNEY: 21 including those already given, defendants have no objections.

However, we would object to the failure of the court to give Defendant's requested jury instruction number 4 or some appropriate form thereof including elimination of the reference to tortious

---

ket value of the property at the time of the breach of the contract.

Whether any of these elements of damage has been proved by the evidence is for you to determine.

**9.** This is found in Volume 7 of the Reporter's transcript.

**10.** The court instead prepared and gave its own Instruction No. 14, which the court later found *sua sponte* to be inadequate.

interference with the contract, including the elimination of that.

And we would further object to the court's failure to give Defendant's requested jury instruction number 7 with the elimination in one, two, three, four, five, and six lines, five and six of the second paragraph, the elimination of by clear and convincing evidence, so that it would read as to exemplary or punitive damages only by finding that defendant, et cetera.

And that's based, of course, on Linscott versus Rainier National Life Insurance Company, your Honor. The Idaho court's position where a contract is involved, punitive damages have to be the proof of conduct by virtue of that case. As the Court says, it has to be much greater, even almost to the extent of criminal conduct as compared to other cases such as negligence cases, your Honor, person injury, or battery, or something like that, your Honor.

That's all the comments I have, your Honor.

THE COURT: All right.

Panhandle's only registered objection was the court's failure to give its requested instructions 4 and 7. Panhandle's post-judgment motions did not pursue, or assess as error, the court's failure to give instructions 4 and 7 or any of Panhandle's other requested instructions.

The alleged error Judge Haman discovered in jury instruction 14 turned out to be no problem in fact. According to the district judge, jury instruction 14 was incorrect because:

[W]hile the instruction advised the jury that they could consider, as elements of damage, both lost profits and the difference between the contract price and the fair market value of the property involved, it did not advise them that they could not award both.

R., 309. However, earlier in the same order the judge recognized that the jury did *not* award both lost profits and replacement costs:

[G]iven the amount of the claimed lost profits as compared to the jury award of

$162,289.24, it would appear that the jury *did not* consider the $100,000.00 [replacement costs] which the Plaintiff paid for the Anhauser–Busch rights in arriving at its ultimate damage award.

R., 295 (emphasis added). Judge Haman also admits that "[n]either I nor anyone but the jury knows if both elements [*i.e.*, lost profits plus business replacement costs] were lumped together by the jury arriving at the award of compensatory damages in this case. *I suspect that only lost profits were considered.*" R., 310 (emphasis added). The numbers raise more than just a suspicion that the jury awarded only lost profits, because the plaintiffs proved up over $300,000.00 in lost profits, yet the total jury award (including punitives) was only $172,989.24.

## B. THEORY OF DAMAGES

In addition to Judge Haman's *sua sponte* determination that jury instruction 14, which was neither objected to nor requested, improperly charged the jury (despite all the clear evidence to the contrary), Judge Haman's other reason given to support the new trial is also weak and of no consequence:

I believe there is also another problem with the Plaintiff's theory of damages, and with the instructions on damages given to the jury (or lack thereof). And this has to do with the contention that lost profits continue forever....

R., 310. Just as the alleged problem with jury instruction 14 was of no real consequence, this "lost profits forever" problem was also illusory. Plaintiff sought profits only up to the time another beer franchise was purchased, to replace the two franchises which the jury found that Panhandle had agreed to sell. There is no evidence that the Anheuser–Busch franchise was not purchased within a reasonable time after Panhandle's breach.

At page 6 of the district court's memorandum decision, the court made clear the plaintiff's theory of damages:

The Defendant claims that it was error for the Court to have allowed Bill Jones III to testify concerning the purchase by

the Plaintiff of the rights to distribute Anhauser–Busch products at a price of $100,000.

Obviously, the Plaintiff presented this testimony in attempting to prove the extent of damages resulting from the claimed breach of contract. Except for a minor item concerning the painting of a truck, the *Plaintiff's entire claim for damages was for lost profits which terminated only upon its purchase of the Anhauser–Busch distribution rights* as a replacement for the Schlitz–Miller rights which it would have received under the contract with the Defendant. R., 294 (emphasis added). The district court, relying upon a case from the Montana Supreme Court, *Bronken's Good Time Co. v. J.W. Brown,* 203 Mont. 427, 661 P.2d 861 (1983), determined that the damage award was for lost profits over an improperly extended period of time. This extended period, according to the district judge, was too long because it went beyond the time that he envisioned was a reasonable period for a franchise contract to last. The decision relied upon by the district judge, however, is properly distinguished from the issues raised in this case.

*Bronken's* deals with damages recoverable to a beer distributor whose franchise was terminated by the brewery, which is not at all the case here. Jones's case is based on Panhandle's breach of a specific contract, the purpose of which was for Jones to acquire the Schlitz and Miller distributorships. *Bronken's* dealt with a franchised distributor and the question of when and under what circumstances the franchise agreement can be terminated by either party (*i.e.,* the distributor and the producer), whether it was terminable at will, or whether terminable at will but only after reasonable notice of intent to terminate and the lapse of a reasonable period of time.

Jones, of course, had *not* acquired the Schlitz and Miller distributorships. Putting this out of mind, the district court somehow brought itself to the conclusion that the jury should have been instructed that Jones's damages for lost profits should cease at some time and the jury might *speculate* that Jones, *had* he acquired the Schlitz and Miller franchises, *might* have been terminated by Schlitz and Miller. This is no haphazard theorizing on my part.

The trial court worded his rationale thusly:

I conclude that the 'modern majority rule' adopted by the Montana Court should be applied to the facts of this case. And, since it would be totally illogical to conclude that lost profits under a contract for a contract should somehow be less subject to speculation than they would be if suit were brought under the contract which was contemplated, I further conclude that the plaintiff in this case was only entitled to recover lost profits for a reasonable time after the contemplated contract [*i.e.* the franchise agreements with the beer companies— not the contract with Panhandle at issue in this case] with the two brewing companies would have been obtained, absent the breach herein by the Defendant. What amount of time is 'reasonable' is a question of fact to be determined by the jury based upon the evidence.

R., 313. Ordinarily jurors, if given any warnings, are also cautioned to not speculate. Here, however, the court below wants the jury on retrial to limit Jones's damages to a reasonable period of time following after the two distributorships (which he never obtained) were terminated by him, or by Schlitz and Miller. It was on the basis of this bizarre hypothesis that the court's conclusion was forthcoming:

Finally, I conclude that, in this case, the jury should have been so instructed. Failure to do so constituted an error at law that requires a new trial on the issue of damages.

R., 313.

## II. IMPROPER *SUA SPONTE* DETERMINATIONS OF ERROR

The insurmountable obstacle to upholding the court's order is found in a lack of authority to do what the court did. Panhandle filed timely motions for j.n.o.v. and

a new trial, but *did not include* in either motion the specifications of error ultimately relied upon by the district judge in his order. According to Rule 59(d) of the Idaho Rules of Civil Procedure the court must give the parties notice and an opportunity to be heard if it decides to grant a new trial for its own reasons. Judgment was entered April 20, 1987. The motions and supporting affidavits were filed April 28, 1987, and the court's written decision was not forthcoming until December 21, 1987. The court made no arrangements for the parties to be heard. In addition, this time frame is slightly beyond the fourteen day limit contemplated by Rule 59(d):

> **Rule 59(d). On initiative of court.—** *Not later than fourteen (14) days after entry of judgment the court of its own initiative may order a new trial* for any reason for which it might have granted a new trial on motion of a party. The court may grant a motion for a new trial, timely served, for a reason not stated in the motion. In either case, such order shall be made only after giving the parties notice and an opportunity to be heard on the matter, and the court shall specify in the order the grounds therefor.

I.R.C.P. 59(d) (emphasis added).

As a majority of this Court recently determined, *sua sponte* determinations of error can erroneously affect a trial judge's decision to grant a new trial. In *Heitz v. Carroll,* 117 Idaho 373, 788 P.2d 188 (1990), this Court determined that "[t]he trial court *sua sponte* concluded that the jury had been improperly instructed, and that conclusion figured into the trial court's analysis in granting the new trial." 117 Idaho at 376, 788 P.2d at 191 (footnote omitted). And, in this Court's exact language:

> In ruling upon the plaintiffs' motion for new trial, the trial court concluded, apparently *sua sponte,* that the plaintiff Mr. Heitz could have had a claim for medical expenses irrespective of whether Dr. Carroll's alleged negligence was a

proximate cause of the death of Mary Heitz.

*Heitz,* 117 Idaho at 378, 788 P.2d at 193. In that opinion this Court stated that "[s]ince the plaintiffs were bound by the issues upon which they tried their case, [citations omitted], *the trial court erred when it considered other issues not raised by the litigants, in granting the motion for new trial."* *Heitz,* 117 Idaho at 379, 788 P.2d at 194 (emphasis added). Rather obvious, so 'twould seem, today's majority opinion is diametrically the converse of *Heitz.*

## III. J.N.O.V. ON THE PUNITIVES AWARDED BY THE JURY

*Soria v. Sierra Pacific Airlines,* cited with approval by the majority, clearly teaches that a trial judge is charged with the task of making a *preliminary* determination as to whether punitive damages are justified. Here, Judge Haman presumably [11] did so and submitted the question of punitives to the jury. For a judge to thereafter question whether *any award* of punitive damages was proper takes away an important aspect of a jury's duties. The judge should decide in the first instance whether the question should go to the jury; and once the judge decides that question is in the hands of the jury.

There are other problems with the district court's consideration of the j.n.o.v. motion. For instance, Ray Carolin, the Schlitz representative, testified that he was explicitly asked by James Crowley, the chief executive officer of Panhandle, to not approve the sale of the franchise to Jones. This request directly contravened the duty Panhandle owed to Jones, and was a willful and flagrant violation of Panhandle's duty under the contract. Such a violation is sufficient to support an award of punitive damages, and the jury was obviously persuaded by Ray Carolin. On a motion j.n.o.v., the trial court may not determine for itself the credibility of the witnesses. *See*

**11.** On the other hand, the district judge may not have done what *Soria* requires. In his order he stated that: "[I]n my view, the better practice is to submit the question to the jury in all but the most obvious cases...." R., 297.

*Quick*, 111 Idaho at 763, 727 P.2d at 1191 ("[T]he trial judge is not free to weigh the evidence or pass on the credibility of witnesses and make his own separate findings of fact and compare them to the jury's findings as he would in deciding on a motion for a new trial.") Nevertheless, in a long and somewhat confusing order, the trial judge stated that he "did not view the witness, Ray Carolin, as being credible." R., 314. Somewhat later in the order he stated that:

> I would have awarded no punitive damages, and, given any view of evidence [sic], and particularly that of Mr. Carolin, any such award could. only result from 'passion or prejudice'.
>
> . . . .
>
> I find no substantial evidence to support an award of punitive damages.

R., 316, 318. This blatantly improper consideration of a motion for j.n.o.v. simply does not catch my attention.

This Court has said that it has free review of a j.n.o.v. grant. *Quick v. Crane*, 111 Idaho 759, 764, 727 P.2d 1187, 1192 (1986). The rationale of today's majority for upholding the trial court's j.n.o.v. does not account for the fact that Panhandle's flagrant breach destroyed the deal, and Jones proved this at trial.

### CONCLUSION

While I understand that a district judge is but one person operating against the time constraints imposed by the Administrative Director of the Courts, I am at a loss to explain how or why a court comprised of *five* judges blithely accepts that rationale as. a basis for upholding a lower court decision founded on such a faulty footing as is the grant of a new trial and j.n.o.v. which we have here reviewed. And, whereas *Dinneen, Quick,* and *Sanchez* all involved personal injury or wrongful death actions (where the damages for present and future pain and suffering, loss of life or limb, are wide open to a jury's assessment), this instant action involved *none* of those elements. Rather it involved only that the jury, and the judge, hear evidence as to lost profits, and compute the same.

The jury performed that function. The judge did not, but rather spoke in vagaries. Vagaries may now be in vogue, at least in this jurisdiction. *Quick* and *Dinneen* and the forerunners which were the backbone of those decisions might as well not have been written.

BISTLINE, Justice, dissenting from denial of plaintiffs' petition for rehearing.

*Dinneen v. Finch*, 100 Idaho 620, 603 P.2d 575 (1979), and *Quick v. Crane*, 111 Idaho 759, 727 P.2d 1187 (1986), might as well not have been written. Such is the tenor of the petition and supporting brief of counsel for Bill Jones and Bill Jones Distributors. I cannot disagree, and wonder if anyone can. The brief states rather forthrightly that:

> A basic concept consistently espoused by this court and the Court of Appeals (See *Quick v. Crane*, 111 Idaho 759, 727 P.2d 1187 (1986), *Sanchez v. Galey*, 112 Idaho 609, 733 P.2d 1234 (1986), *Nations v. Bonner Building Supply, supra*) is that Judges must give reasons for their decisions on new trial motions.
>
> Once an examination of the rhetoric and case citations are stripped away from the district court's decision, the question becomes: Did the district judge set forth his reasons in finding that there was 'passion and prejudice?' The answer to this question is no. The only reasoning process undertaken with regard to the facts of the case made by the district judge in substituting his opinion for the jury's was that he 'cannot determine with precision the amount of damages which would have been awarded by the Court if the trial were had without the jury.' R. 315, but his award would have been less. The district court does not shed any light whatsoever on how he reaches the conclusion. We, the reader of the decision and you, the Supreme Court of the State of Idaho, are left in a 'black hole' of reasoning as to how the district judge factually arrived at his conclusion. Is the trial court's decision that the jury's verdict was the result of pas-

sion and prejudice based upon a mistaken view of the law as previously set forth in other briefs ...? 'Why' does the judge arrive at his conclusion that the verdict 'could only' be the result of passion and prejudice when he previously stated that there was substantial evidence to justify the jury's verdict on the issue of damages?

This court is consistently inundated with appeals on the issue of motions for new trial. This inundation will continue until this court sets forth a clearly enunciated process by which the district judge *must* set forth his reasoning process when he or she chooses to substitute his opinion for that of the jury. Because there have been so many appeals on new trial issues, it appears that a simplified 'paint by number' process should be set forth by this court in order for a trial judge to overturn a jury's verdict in a Rule 59 decision. The following should be required:

1. The trial judge must consider whether the verdict was against the weight of the evidence. See *Blaine v. Byers, supra, Robertson v. Richards, supra.* ('The first prong directs the trial judge to consider whether the verdict was against the weight of the evidence.' *Robertson,* 115 Idaho [628] at 631 [769 P.2d 505 at 508].)

2. The trial court should determine whether a different result would follow in a retrial. See *Blaine, supra, Robertson, supra:*

'The second prong of *Blaine* directs the trial court to consider whether a different result would follow in a retrial:

Additionally, the general rule which prevails in this jurisdiction is that a motion for a new trial should not be granted unless it appears that a different result would follow a retrial. *Id.* 91 Idaho [665] at 671, 429 P.2d [397] at 403.'

115 Idaho at 632 [769 P.2d at 509].

3. If the trial court is going to grant a motion for new trial, the trial court must set forth its reason. This court followed an articulated reasoning process in *Dinneen v. Finch,* 100 Idaho 620, 603 P.2d 575 (1979); so should a trial court in order for an appellate court to conduct an appropriate review.

. . . .

An examination of this court's decision [1] ... with regard to the issue of compensatory damages, reveals that this court's entire reasoning process was as follows:

'After reviewing the evidence, we are not convinced that the trial court committed a 'manifest abuse of [its] wide discretion' when it found that the jury's award was excessive and could have only resulted from passion or prejudice, therefore justifying a grant of a new trial on compensatory damages pursuant to I.R.C.P. 59(a)(5). The trial court's memorandum opinion demonstrates that it properly applied the standards set out in our most recent cases.'

An examination of the record and the trial court's decision leaves one in the dark with regard to the resoning behind the district court's decision. The district court's analysis was simply a 'conclusion.' It stated it would not have decided in the same way and that the jury's decision 'could only' be a result of 'passion and prejudice.' No explanation was given as to 'why' it reached this factual conclusion.

The Court of Appeals already believes that *Quick v. Crane* requires that a trial judge must give a reason for his or her decision on a new trial motion. This court, in *Dinneen v. Finch,* went through a reasoning process when it concluded that a new trial should have occurred. A review of the district court's decision in this case leaves one with the following question which remains unanswered: 'What is there about the jury's decision that leads one to believe that there was no basis for the decision and that the jury's decision could only have been the result of passion and prejudice?' The trial judge failed to articulate any

---

**1.** Counsel is referring to the Idaho Supreme Court.

factual reason why damages were excessive.

If our system is going to requre 14 citizens to sustain lost wages and loss of contact with their family while fulfilling their duty as jurors, (ignoring for the moment the time and money expended of the litigants and their attorneys) before the district court substitutes its opinion for that of the jury, it should be required to articulate its reasoning process in the same manner as did this court in *Dinneen v. Finch, supra.* While requiring the district judge to go through an articulated reasoning process may be considered by some to be too great a burden on the already busy district judge, it in the long run will save not only the district court's time but also the time of the jurors, the litigants, the attorneys, and the appellate courts.

## CONCLUSION

Based upon the foregoing argument, this court's existing decision in *Jones v. Panhandle* should be reconsidered. Upon reconsideration, punitive damages and compensatory damages should be reinstated. In the alternative, should this court determine that the trial court is required to articulate its reasons when reaching a conclusion to grant a new trial, this case should be remanded to the trial court for further proceedings.

Plaintiffs-appellants' Brief in Support of Petition for Rehearing, 11–15.

My concern is that, as an appellate court, we have effectively disowned *Dinneen* and *Quick,* and instead operate on a case-by-case basis when it comes to reviews of motions for new trial. For example, consider this Court's opinion in *Heitz v. Carroll,* 117 Idaho 373, 788 P.2d 188 (1990), with the opinion on *Jones v. Panhandle.* Chief Justice Bakes writes for the majority in both cases and reviews motions for new trial in both cases. In both cases the trial judge created error.[2] There the comparison ends, because in *Heitz* the majority

holds that the judge's own error is not an appropriate ground for a new trial, but in *Jones* the judge's finding of error in instruction 14 is affirmed. Perhaps, as Andre Gide once wrote, this Court believes that "in irresolution lies the secret of not growing old."

---

**2.** In *Heitz,* the trial court found error in the special verdict form because it did not include certain legal theories not requested by the parties. In *Jones* the trial court found error in a jury instruction that was neither objected to nor unclear.