835 P.2d 651

**Floyd I. LITCHFIELD and Betty Litchfield, husband and wife, Plaintiffs–Appellants,**

**v.**

**Don NELSON and the County of Bonner, State of Idaho, Defendants–Respondents.**

**No. 19241.**

Court of Appeals of Idaho.

July 2, 1992.

Petition for Review Denied Aug. 28, 1992.

Aherin & Rice, P.A., Lewiston, for plaintiffs-appellants. Darrel W. Aherin, argued.

James J. Davis, Boise, argued, for defendants-respondents.

WALTERS, Chief Judge.

Floyd and Betty Litchfield brought this tort action against Bonner County and its sheriff, Don Nelson, seeking to recover for injuries the Litchfields suffered when a drunk driver, Larry Dawson, collided with their vehicle. Dawson had been serving a sentence in the Bonner County Jail for driving under the influence but was released by court order to attend inpatient alcohol treatment in Clearwater County. The accident occurred while Dawson was en route from the jail. The jury hearing the case found no liability on the part of the county or the sheriff and returned a verdict against the Litchfields. This appeal stems from the district court's denial of the Litchfields' post-trial motions for a judgment notwithstanding the verdict and for a new trial. We affirm.

### Facts and Procedural History

On January 26, 1988, Dawson appeared before Bonner County Magistrate Judge Debra Heise for sentencing on his plea of guilty to misdemeanor DUI. As part of his sentence, the judge ordered that Dawson serve sixty days of a six-month jail sentence, and required that he attend an extended inpatient treatment program, allowing credit for thirty days against his jail time. The judge also suspended Dawson's driver's license for 180 days, but granted work release and allowed Dawson limited driving privileges for that purpose. The judge then placed Dawson on two years' unsupervised probation and ordered Dawson to report to the Bonner County Jail on February 24, 1988, to begin serving his sentence. On February 23, Dawson was sentenced to sixty days' confinement on an unrelated DUI in Kootenai County. The Kootenai County judgment provided that Dawson serve his sentence in the Bonner County Jail, concurrently with his Bonner County sentence.

Dawson presented himself at the Bonner County Jail on February 24, 1988, as ordered. Shortly thereafter, Judge Heise received a letter indicating Dawson had been scheduled for admittance to the Idaho Drug and Alcohol Treatment Center (ATC) in Orofino, Idaho, on March 3, 1988. Judge Heise wrote in longhand on the bottom of the letter, "Release March 3, 1988 authorized. Defendant to send proof to Clerk's

Office of admittance. D. Heise." The letter was then routed to the Bonner County Prosecutor's Office, and from there to the Sheriff's Office, where it was received, on March 1, by the sergeant in charge of detention, Cliff Atkeson. Because it was unclear to him what the jail was supposed to do with Dawson, Sergeant Atkeson telephoned Judge Heise. Atkeson's notes memorializing that conversation reflect the following instructions from the judge:

1. Give Clerk's card to Dawson.

2. Inform Dawson he is to give card to Orofino and tell them Judge Heise requests a confirmation from them to the Clerk of the Court stating he is at Orofino and an additional letter when he finishes the treatment.

3. Explain to Dawson he must return to Bonner County Detention Center to finish his remaining time immediately [sic] after he gets out of Orofino.

4. Explain to Dawson he is to provide his own way to and from Orofino per Judge Heise.

On March 3, 1988, Dawson's jailers released him, and Dawson got into his pickup truck and drove away, evidently headed for the ATC in Orofino. While in transit, Dawson detoured from his route and consumed a significant quantity of alcohol. At approximately three o'clock that afternoon, while driving on Highway 95 just south of Lapwai, in Nez Perce County, Dawson swerved into the oncoming lane of traffic and collided head-on with the Litchfields' southbound vehicle, injuring the Litchfields. Laboratory tests showed Dawson had a blood alcohol content of 0.34 percent at the time.

The Litchfields subsequently brought this tort action naming Bonner County, as the county employer and the administrator of the Bonner County Jail, and Bonner County Sheriff Don Nelson (hereinafter referred to collectively as "Bonner County"), seeking recovery under a theory of negligent supervision.[1] At trial, the Litchfields alleged that Bonner County owed them a duty to supervise Dawson's transportation from the jail to the ATC in Orofino, at least insofar as ensuring that Dawson did not drive himself while his license was suspended. They further argued that Bonner County failed to exercise reasonable care in carrying out this duty, and that the breach of this duty proximately caused their injuries. At the conclusion of the evidence, the Litchfields moved for a directed verdict. The trial court denied the motion and submitted the case to the jury with a special verdict form that asked, "Was there negligence, as defined in these instructions, on the part of the Defendants, Bonner County and/or Sheriff Don Nelson, which was a proximate cause of the Plaintiffs' injuries?" The jury's answer, by a vote of ten to two, was "No." The Litchfields moved for a judgment notwithstanding the verdict, and, alternatively, for a new trial. The court denied both motions and the Litchfields appealed.

The Litchfields have asserted no impropriety with respect to the evidence admitted, the conduct of opposing counsel, or the instructions given to the jury. They appeal only from the court's decisions denying their post-trial motions for judgment n.o.v. and for new trial. We address these two issues in turn.

### Judgment N.O.V.

A motion for judgment n.o.v. under I.R.C.P. 50(b) admits the truth of all adverse evidence and every inference that may legitimately be drawn therefrom. *Jones v. Panhandle Distributors*, 117 Idaho 750, 752–53, 792 P.2d 315, 317–18 (1990). In considering the motion, the trial court is not free to make its own findings of fact but must construe the evidence in a light most favorable to the non-moving party. *Id.* The requisite standard is whether the evidence is of sufficient quantity and probative value that reasonable minds could reach the same conclusion as did the jury. *Quick v. Crane*, 111 Idaho 759, 763–64, 727 P.2d 1187, 1191–92 (1986). The question is

---

1. Prior to instituting this lawsuit, the Litchfields settled their claim with Dawson. Judge Heise was not named in this action, evidently on the grounds of judicial immunity, and the court specifically instructed the jury that the County was not liable for her actions.

decided by the trial court as a matter of law. *Id.*, 111 Idaho at 763, 727 P.2d at 1191. If there is substantial evidence to support the jury's verdict, the motion should be denied. *Garnett v. Trans-america Ins. Servs.*, 118 Idaho 769, 780, 800 P.2d 656, 667 (1990). This same standard is applied by the appellate court on review. Accordingly, we exercise free review of the record, without deference to the views of the trial court, to determine whether the verdict can be supported under any reasonable view of the evidence. *See Jones*, 117 Idaho at 753, 792 P.2d at 318.

■ In this case, the jury returned a verdict against the Litchfields, concluding there was no negligence on the part of the defendants which proximately caused the Litchfields' injuries. The Litchfields, as plaintiffs, bore the burden of proving *all* the elements of their negligence claim, *i.e.*, duty, breach of duty, causation and damages. Therefore, a finding adverse to them on any one element would require the jury to return a verdict against them. As explained below, we conclude there was substantial evidence to support a finding that the defendants breached no duty owed to the Litchfields, and we affirm the district court's ruling on that basis.

■ Idaho adheres to the general rule that one does not have a duty to control the conduct of another. *Sterling v. Bloom*, 111 Idaho 211, 225, 723 P.2d 755, 759 (1986); RESTATEMENT (SECOND) TORTS § 315 (1966). Thus, absent a showing of special circumstances, a municipality owes no duty to protect any particular individual against the criminal acts of a third person, as the duty of providing protection from crime is one owed only to the general public. *Lundgren v. City of McCall*, 120 Idaho 556, 557, 817 P.2d 1080, 1081 (1991);

see also 57 AM.JUR.2D *Municipal, County, School, and State Liability* §§ 441, 456–462 (1988). However, civil liability may be imposed under an exception where a "special relationship" exists. *Lundgren*, 120 Idaho at 557, 817 P.2d at 1081; *Sterling*, 111 Idaho at 225, 723 P.2d at 759. Such a relationship may be custodial in nature, requiring the defendant to control his charge and to guard other persons against his dangerous propensities. *Sterling*, 111 Idaho at 225, 723 P.2d at 759, *citing* RESTATEMENT (SECOND) TORTS § 319 [2] *and* PROSSER AND KEETON ON TORTS § 56, at 383 (5th ed. 1984). Embracing these established principles, our Supreme Court in *Sterling v. Bloom* held that a probation officer owed a duty of care to individual members of the traveling public foreseeably endangered by the officer's negligent supervision of a probationer. 111 Idaho at 225, 723 P.2d at 759. As specifically noted by the Court, the key to this duty is the relationship between the supervisor and the supervisee. "[I]n the absence of the *requisite relationship* there generally is no duty to protect others against harm from third persons." *Id.*, 111 Idaho at 225, 723 P.2d at 759 (emphasis original; citation omitted).

These legal principles, which were central to issue of liability at trial, were covered in the court's instructions to the jury.[3] Specifically, Instruction No. 26 read:

There is no duty to control the conduct of a third person to prevent him from causing physical harm to another *unless a special relationship exists between the actor and the third person* which imposes a duty upon the actor to control the third person's conduct.

For there to be a special relationship between the actor and the third person,

---

**2.** Section 319 of the *Restatement (Second) of Torts* states that, "One who takes charge of a third person whom he knows or should know to be likely to cause bodily harm to others if not controlled is under a duty to exercise reasonable care to control the third person to prevent him from doing such harm."

**3.** The verdict form submitted to and answered by the jury asked, "Was there negligence, *as defined in these instructions,* on the part of the

Defendants, Bonner County and/or Sheriff Don Nelson, which was a proximate cause of the Plaintiffs' injuries?" Neither party has raised any objection to court's instructions, and accordingly their propriety and correctness are not at issue on appeal. Our review focuses solely on whether the evidence was sufficient to support the jury's verdict under the instructions given.

the actor must have the ability and obligation to control the conduct of the third person.

Thus, if you find Bonner County or Sheriff Don Nelson at the time of the accident had the ability and the obligation to control Mr. Dawson, there was a special relationship between them.

(Emphasis added.)

█ Bonner County correctly states that, if the jury was not persuaded by the evidence that a "special relationship" existed at the relevant time, it would of necessity conclude that there was no duty on Bonner County's part to prevent Dawson from harming the Litchfields. Hence, our task on appeal is to review the record to determine whether it contains evidence sufficient to support a finding that the requisite custodial relationship between Dawson and Bonner County did not exist at the time of the accident.

The undisputed evidence establishes the following. Judge Heise ordered Dawson confined in the Bonner County Jail and also that he undergo inpatient alcohol treatment. After Dawson began serving a term of confinement, but before he had completed it, Judge Heise authorized the Bonner County Jail to release Dawson to attend the Orofino ATC in Clearwater County. However, she did not issue a transportation order but specifically instructed the jail to "explain to Dawson he was to provide his own way to and from Orofino," and to "explain to Dawson he must return to Bonner County Detention Center to finish his remaining time." The judge's instructions concerning Dawson's release further indicate that Dawson was to arrange to have the ATC confirm his arrival and departure *with the court.* At trial, Judge Heise testified it was her judicial philosophy to place the burden and expense of rehabilitation on defendants, not taxpayers, and for that reason she had intended that Dawson take sole responsibility for his alcohol treatment, and she intended the jail to do no more than forward her directions to Dawson and release him.

The record additionally contains evidence of the standards and procedures followed in neighboring jails where inmates are temporarily released by court order. That evidence unequivocally demonstrated that without a transport order, jail officials were without obligation or authority to actually transport the inmate. However, the witnesses presented conflicting opinions on the question whether a jail would have any supervisory authority at all over the released inmate.

Notwithstanding the Litchfields' contention that Bonner County could have or should have taken steps to prevent Dawson from harming them, Bonner County could not be held liable for its failure to do so in the absence of the requisite custodial relationship. From the evidence in the record, the jury could find that Bonner County was under no obligation to oversee Dawson's transportation arrangements or to supervise him once released, and therefore, that no special relationship existed at the time of the accident.

█ The Litchfields further assert that Dawson's contemporaneous sentence imposed under the Kootenai County judgment, which ordered that Dawson serve sixty days in the Bonner County Jail, gave Bonner County the authority and obligation to supervise Dawson's transportation during the period of that sentence, notwithstanding Judge Heise's order. However, the evidence shows that neither the Kootenai County judgment nor its terms were ever conveyed to the Bonner County jailers. Based on this evidence, the jury could reasonably conclude that the terms of the Kootenai County judgment—which were in conflict with Judge Heise's subsequent orders—did not give rise to a special relationship between Dawson and Bonner County.

█ Finally, the Litchfields argue that Bonner County's constructive knowledge, if not actual knowledge, that Dawson's driving privileges were suspended at the time of his ordered release imposed a duty to ensure that Dawson did not drive himself to Orofino. However, there is nothing in the record to show that Bonner County or its agents actually witnessed Dawson climb into his truck and drive off. As explained above, however, the jury reasonably could

conclude that once the Bonner County Jail complied with the court-ordered release, its special relationship with Dawson, and its consequent duty to control him, had terminated.

We conclude that the record contained substantial evidence, albeit conflicting, to support a finding that Bonner County owed no duty to the Litchfields to control Dawson after his release, and that the jury reasonably could conclude there was no negligence on the part of Bonner County which proximately caused the Litchfields' injuries. Accordingly, the district court's denial of the motion for judgment n.o.v. is affirmed.

### New Trial

 We next consider whether the court erred in denying the Litchfields' motion for a new trial, made on the ground that the evidence was insufficient to justify the verdict. I.R.C.P. 59(a)(6). On a motion for a new trial, unlike a motion for a directed verdict or judgment n.o.v., the trial court has broad discretion to weigh the evidence and the credibility of witnesses, and it may set aside the verdict based upon its independent evaluation of the evidence, even though there is substantial evidence to support the verdict. *Robertson v. Richards*, 115 Idaho 628, 631, 769 P.2d 505, 508 (1989). In considering a motion for new trial on the grounds of insufficient evidence under I.R.C.P. 59(a)(6), the trial court is required to undertake a two-part analysis. First, the court is to consider whether the verdict was against the weight of the evidence and if the ends of justice would be served by vacating the verdict. The court then must consider whether a different result would follow in a retrial. *Burggraf v. Chaffin*, 121 Idaho 171, 174, 823 P.2d 775, 778 (1991). The trial court is not merely authorized to engage in this weighing process, it is obligated to do so. *Sanchez v. Galey*, 112 Idaho 609, 614, 733 P.2d 1234, 1239 (1986). Our role on appeal, however,

is not to "re-weigh" the evidence, but is limited to determining whether there was a manifest abuse of discretion by the trial court. *Burggraf*, 121 Idaho at 173, 823 P.2d at 777; *Hilden v. Ball*, 117 Idaho 314, 317, 787 P.2d 1122, 1125 (1990). In determining whether such an abuse occurred, we inquire whether the trial court correctly perceived the issue as one of discretion, whether the trial court acted within the outer boundaries of its discretion and consistently with the legal standards applicable to the specific choices available to it, and whether the trial court reached its decision by an exercise of reason. *Burggraf*, 121 Idaho at 173, 823 P.2d at 777. Absent a showing of manifest abuse of discretion, we will not disturb the lower court's decision on appeal. *Id.*

 The Litchfields assert that the trial court failed to demonstrate on the record that it performed its requisite weighing function, and that its order denying the motion therefore should be reversed.[4] In *Quick v. Crane*, our Supreme Court recognized that in order for the appellate court to properly conduct a review of a trial court's ruling to grant or deny a motion for new trial, the record *must* disclose the reason for the lower court's decision. 111 Idaho at 772, 727 P.2d at 1200. Thus, when a trial court *grants* a motion for new trial, it should state its reasons with particularity unless it is obvious from the record itself. Whereas, if the trial court simply *denies* the motion, it need only state, or point to where in the record it reveals, that the moving party has failed to meet its burden to justify granting the motion. In either case, the court must distinguish between the various motions and the grounds upon which they are based, and not simply lump them all together and issue a general grant or denial. *Id.*, 111 Idaho at 773, 727 P.2d at 1201.

In its memorandum opinion denying the motion for new trial, the district court ac-

---

**4.** We note, however, that where the trial court fails to adequately state its reasons for granting or denying the motion for new trial, and it is not obvious from the record why the motion was denied, the proper response on appeal is *not* to reverse the ruling, but to remand the case to the trial judge—who heard the evidence—to state his or her reasons for the grant or denial. *See Quick v. Crane*, 111 Idaho 759, 773, 727 P.2d 1187, 1191 (1986).

knowledged its discretionary function, identified the appropriate considerations governing its decision, and then concluded:

> The Court is of the opinion the verdict was supported by evidence and that justice would not be served by vacating the jury's verdict. The court is not convinced a retrial would result in any different conclusion than that reached by this jury.

This record comports with the direction in *Quick v. Crane* and allows us to ascertain whether the court abused its discretion. The Litchfields have not shown that the court acted in excess of or inconsistent with the law, or that the court reached its decision unreasonably. Finding no abuse of discretion, we uphold the trial court's decision to deny the motion for new trial.

### Conclusion

The record before us contains substantial, albeit conflicting evidence to support the jury's verdict finding Bonner County and Sheriff Nelson not liable for the Litchfields' injuries. Accordingly, the trial court's decision denying the motion for judgment n.o.v. is affirmed. Further, we find no abuse of discretion in the court's decision to deny the motion for new trial, and uphold that decision on appeal.

Costs to respondents, Don Nelson and Bonner County. No attorney fees awarded on appeal.

SWANSTROM and SILAK, JJ., concur.