864 P.2d 184

Cora SULLIVAN, Plaintiff–Appellant,

v.

Dallas BULLOCK and Jerry Doty, individually and dba New Home Development, a partnership; Does I Through Does V, Defendants–Respondents.

No. 20145.

Court of Appeals of Idaho.

Nov. 15, 1993.

Alexanderson, Davis, Rainey & Whitney; David L. Whitney, Caldwell, for plaintiff-appellant.

William J. Schwartz, Meridian, for defendants-respondents.

WALTERS, Chief Judge.

The issue at trial in this action was whether it was the homeowner or the contractor who breached a written contract to remodel several rooms in a home. The jury returned a special verdict finding that although the contractor had not substantially performed under the contract, he had been prevented from doing so by the homeowner. The jury awarded $2,956.40 in damages to the contractor, essentially the balance of the contract price. The homeowner filed a motion for judgment n.o.v. or for a new trial, which was denied. The homeowner appeals the judgment and denial of her motion. She contends that the jury's verdict is contrary to the law and the evidence presented. She also claims that the trial court erroneously rejected one of her proposed jury instructions, excluded evidence, and awarded costs and attorney fees to the contractor.

We affirm the denial of the motions in so far as the decision below holds that the homeowner prevented the contractor's complete performance. However, we reverse and remand the decision to the extent it approved an erroneous measure of damages in favor of the contractor. We also vacate the award of attorney fees and remand for further consideration by the district court.

## I. FACTS

The evidence presented at trial established that in April 1991, Cora Sullivan hired Dallas Bullock, doing business as New Home Development, to remodel her kitchen, hallway, utility room, bathroom and sewing room, for a total price of $6,780. The written contract set out the major aspects of the project but lacked detail. No design sketches were agreed to by the parties. Less than detailed communications between Mrs. Sullivan and Mr. Bullock resulted in misunderstandings regarding exactly what the final product would look like. Eventually the contract was breached in several respects. The work was not begun or completed by the dates set out in the contract. Mrs. Sullivan, however, assented to the delays. Evidence was presented that the work performed by Mr. Bullock and the subcontractors he hired was sometimes below the industry standard for the area, not as Mrs. Sullivan had requested, and was not performed to her satisfaction. In other words, according to Mrs. Sullivan and other witnesses, the improvements were not "constructed and completed in a good and workmanlike manner" as expressly required by the contract. However, evidence was presented that during the time the work was being performed, Mrs. Sullivan did not clearly convey to Mr. Bullock her dissatisfaction and he continued with the perception that the project was progressing with approval. During the project, Mr. Bullock incurred costs not provided for in the contract, primarily for electrical work to bring the kitchen up to code and for plumbing. There was no evidence that Mrs. Sullivan approved the extra costs for the electrical work.

For a period while construction was progressing, Mrs. Sullivan did not live at the home. Eventually, however, she moved in while the remodeling continued. At one time, Mrs. Sullivan told Mr. Bullock that she would not be at home on a certain day and, feeling protective of her personal belongings, she did not want the workman there while she was gone. Unfortunately, and unbeknownst to Mr. Bullock, one of the workman entered the home through a window to complete some work while Mrs. Sullivan was gone. This so upset Mrs. Sullivan that she angrily confronted Mr. Bullock and told him that neither he nor his

workman were to ever set foot in her house again. Further requests by Mr. Bullock and others to enter the home and continue the project were refused by Mrs. Sullivan. On July 1, 1991, Mr. Bullock submitted a "final" bill to Mrs. Sullivan for $2,956.40, purportedly for work completed, but also representing the contract balance for the completed project.

## II. PROCEDURAL HISTORY

In October 1991, Mrs. Sullivan filed a complaint in the district court, asserting that Mr. Bullock's workmanship was grossly defective and that he had been unresponsive to requests to improve his product. The complaint sought damages in the amount of $19,703 to completely redo the work Mr. Bullock had started and return of the $5,932 she had already paid him. Mr. Bullock answered Mrs. Sullivan's complaint and filed a counterclaim. He alleged that his work was satisfactory, that any unsatisfactory work could be fixed, but that Mrs. Sullivan had prohibited him from finishing the project or fixing defects. He stated that Mrs. Sullivan had paid $5,906 and he requested $2,956.40 in damages for the work he had performed. He also asserted a claim against Mrs. Sullivan, seeking damages for slander.

The trial addressed the breach of contract claim. The counterclaim alleging slander was voluntarily dismissed. The jury returned a special verdict finding that Mr. Bullock had not substantially performed under the contract, but that he had been prevented or substantially hindered from performing by Mrs. Sullivan. The jury awarded him $2,956.40, and the court awarded him costs and attorney fees as provided by the contract. Mrs. Sullivan moved for judgment n.o.v. or new trial. Her motion was denied. She appeals the judgment and the denial of her motion.

## III. ANALYSIS

### 1. Denial of Motion for Judgment N.O.V.—Standard of Review

A motion for judgment n.o.v. under I.R.C.P. 50(b) admits the truth of all adverse evidence and every inference that may legitimately be drawn therefrom. *Jones v. Panhandle Distributors*, 117 Idaho 750, 752–53, 792 P.2d 315, 317–18 (1990). In considering the motion, the trial court must construe the evidence in a light most favorable to the non-moving party. *Id.* The requisite standard is whether the evidence is of sufficient quantity and probative value that reasonable minds could reach the same conclusion as did the jury. *Quick v. Crane*, 111 Idaho 759, 763–64, 727 P.2d 1187, 1191–92 (1986). The question is decided by the trial court as a matter of law. *Id.*, 111 Idaho at 763, 727 P.2d at 1191. If there is substantial evidence to support the jury's verdict, the motion should be denied. *Garnett v. Transamerica Ins. Servs.*, 118 Idaho 769, 780, 800 P.2d 656, 667 (1990). This same standard is applied by the appellate court on review. Accordingly, we exercise free review of the record, without deference to the views of the trial court, to determine whether the verdict can be supported under any reasonable view of the evidence. *See Jones*, 117 Idaho at 753, 792 P.2d at 318.

*Litchfield v. Nelson*, 122 Idaho 416, 419–20, 835 P.2d 651, 654–55 (Ct.App.1992).

### 1A. Prevention

First, we examine the jury's finding that Mrs. Sullivan prevented or hindered Mr. Bullock's performance. Implied in every contract is a condition to cooperate.

In any case where the plaintiff's performance requires the cooperation of the defendant, as in a contract to serve or to make something from the defendant's materials or on his land, the defendant, by necessary implication, promises to give this cooperation and if he fails to do so, he is immediately liable although his only express promise is to pay money at a future day.

Indeed, there is generally in a contract subject to either an express or an implied condition an implied promise not to prevent or hinder performance of the condition. Such prevention, if the condition

could otherwise have been performed, is, therefore, an immediate breach of contract, and if of sufficiently serious character, damages for the loss of the entire contract may be recovered.

11 WILLISTON, CONTRACTS § 1316 (3rd ed. 1968). *See also* 17A AM.JUR.2d *Contracts* § 380 (1991); 17A C.J.S. *Contracts* § 468 (1963). In construction contracts, the duty to cooperate encompasses allowing access to the premises to enable the contractor to perform the work. 17A C.J.S. *Contracts* § 468.

The duty to cooperate is recognized in Idaho. In *McOmber v. Nuckols*, 82 Idaho 280, 353 P.2d 398 (1960), our Supreme Court held that the plaintiff who had refused to allow the defendant to perform the rental service for which he had been contracted, or who had imposed conditions which made performance by the defendant impracticable, could not recover damages. A similar result was found in *Molyneux v. Twin Falls Canal Co.*, 54 Idaho 619, 35 P.2d 651 (1934), wherein the Court held that a party to a contract to construct a drainage tunnel could recover damages if he had been prevented by the other party from completing the project. In other words, nonperformance under the contract was excused if the other party prevented the performance.

■ To excuse a party's nonperformance, however, the conduct of the party preventing performance must be "wrongful" and "in excess of their legal rights." 17A C.J.S. *Contracts* § 468. Other authorities have stated that the conduct of the party preventing performance must be outside what was permitted in the contract and "unjustified," or outside the reasonable contemplation of the parties when the contract was executed. *Godburn v. Meserve*, 130 Conn. 723, 37 A.2d 235 (1944); *Morton Buildings, Inc. v. Dept. of Human Resources*, 10 Kan.App.2d 197, 695 P.2d 450 (1985); *Kooleraire Service and Installation Corp., v. Board of Education of the City of New York*, 28 N.Y.2d 101, 320 N.Y.S.2d 46, 268 N.E.2d 782 (1971). Our Supreme Court has echoed this standard in *Molyneux* by stating:

> If, at the time appellant [the canal company] ordered respondent [*Molyneux*] to stop work, it intended to drill the tunnel any additional length and then or later should proceed with the tunnel without having previously *in good faith and pursuant to the contract* determined to terminate the tunnel, it was obligated to let respondent do the work, and if it did not permit respondent to do such work appellant would, in such case, have breached its contract with respondent.

*Molyneux*, 54 Idaho at 629, 35 P.2d at 655 (emphasis added).

Here, the trial court's instructions to the jury properly reflected this statement of the law. Jury instruction twenty-one set out the elements required to be proved by Mrs. Sullivan for her to prevail on her complaint.[1] It also set out the elements required of Mr. Bullock in his counterclaim. The issue of prevention was described in

---

**1.** Jury instruction twenty-one states in pertinent part:

> In order for the plaintiff to recover, the plaintiff has the burden of proving each of the following propositions:
>     1. That a contract was in existence between the plaintiff and the defendant;
>     2. That the defendant has failed to substantially perform the contract;
>     3. That because of the defendant's failure to perform the contract, the plaintiff has been damaged or not received the benefits, payments or performance to which the plaintiff is entitled under the contract; and
>     4. The nature and amount of the payments due to or damages suffered by the plaintiff.
>     . . . .

> In order for the defendant to recover on his counterclaim, the defendant has the burden of proving each of the following propositions:
>     1. That a contract was in existence between the plaintiff and the defendant;
>     2. That the defendant has substantially performed the contract;
>     3. That the plaintiff has failed to substantially perform the contract by failing to pay the defendant for services or materials rendered;
>     4. That because of plaintiff's failure to perform the contract, the defendant has been damaged or not received the benefits, payments or performance to which the defendant is entitled under the contract; and
>     5. The nature and amount of the payments due to or damages suffered by the defendant.

instruction twenty-two, which follows the theory stated in *Molyneux* that the act of prevention must have been unreasonable, in other words, outside the contemplation of the parties as expressed in the contract.[2]

■ The jury returned a verdict stating that Mr. Bullock had not substantially performed but that Mrs. Sullivan had unreasonably prevented his performance. There was substantial evidence from which the jury could conclude that Mr. Bullock's failure was to be excused by Mrs. Sullivan's act of denying access to her home. True, an employee did enter Mrs. Sullivan's home when he was not supposed to. However, when Mrs. Sullivan denied any further access to the home she acted in a manner that was outside the contemplation of the contract or the parties when they executed the contract. Viewing the record in the light most favorable to Mrs. Sullivan, we hold that a reasonable view of the evidence supports the verdict.

### 1B. Damages

Next, Mrs. Sullivan argues that the award of damages to Mr. Bullock was against the weight of the evidence and the law. The jury awarded Mr. Bullock $2,956.40, the full amount he requested in his counterclaim for "work already completed." Mrs. Sullivan asserts that Mr. Bullock cannot recover the full contract price when he was found by the jury not to have substantially performed.

First, we find it necessary to clarify that the amount requested by Mr. Bullock represented the balance due upon the completion of the contract, not just the cost of the work already performed. The contract stated that the work was to be performed for a total fixed price of $6,780, which included the costs for labor and materials for the kitchen and bathroom cabinets, remodeling the new soffit, carpet and vinyl, and an oak china hutch. Another $1,872 was added when Mrs. Sullivan bought new appliances. Unexpected costs of $851.40

for necessary electrical work and $362 for plumbing were incurred. Another $337 was added for "extra vinyl over budget amount." Adding everything together, the total amount of the project was $10,202.40. Mrs. Sullivan had paid $2,034 when she signed the contract, $2,000 in a second installment, and $1,898 for the appliances, for total payments of $5,932. Mr. Bullock, however, only credited her for an appliance payment of $1,872, indicating a discrepancy of $26. Mr. Bullock also credited her $1,350 for the china hutch he was building, but testified that he gave that credit to make up for the cost of the unexpected electrical work. Therefore, Mrs. Sullivan's total payments and credits added up to $7,282. Mr. Bullock charged her for the $2,956.40 remaining on the total project cost. In other words, the amount charged in the "final" bill reflects the contract price as originally agreed upon, plus the unexpected costs, minus Mrs. Sullivan's payments and credits with the exception of the $26 discrepancy involving the appliance payment. Mr. Bullock testified that completing the project would require more money still, and that his final bill only accounted for what Mrs. Sullivan had received. We find this position untenable. Mr. Bullock's statement reveals that the cost of completing the project would have once again exceeded the contract price—an increase for which Mrs. Sullivan would not be ultimately responsible.

■ As previously stated, a party who is prevented from performing by the party for whom the work is to be done, may treat the contract as breached and may recover damages sustained. 11 WILLISTON, CONTRACTS § 1316; 17A C.J.S. *Contracts* § 469; *Dieterle v. Gatton*, 366 F.2d 386 (6th Cir.1966); *Jacobs v. Jones*, 161 Colo. 505, 423 P.2d 321 (1967); *Broadway Roofing & Supply, Inc. v. Covello*, 144 Colo. 562, 357 P.2d 356 (1960). *See also* 13 AM.JUR.2d *Building and Construction Contracts* § 78 (1964) (if a contractor is

---

**2.** Jury instruction twenty-two states:
The failure of the defendant to fully perform a contract is excused if you find that his performance was unreasonably prevented or substantially hindered by the conduct of the plaintiff or her agents. The defendant has the burden of establishing that his performance was hindered or prevented.

prevented by the owner from completing a contract, the contractor may recover his lost profits on the whole contract, in a suit on the contract, or for what has been finished, in quantum meruit.) We note that Mr. Bullock could have sought damages under a quantum meruit theory, which would have provided an avenue for recovering for the services and materials he had provided. However, he did not request or present evidence to support such a remedy. In fact, the district court stated in its memorandum decision denying the motions for judgment n.o.v. and new trial that "Quantum meruit is not applicable to this case." Thus, the damages awarded to Mr. Bullock are justified only as an award for breach of contract.

The doctrine of prevention is an equitable doctrine designed to excuse non-performance by the nonbreaching party. *Morton Buildings, Inc. v. Dept. of Human Resources*, 695 P.2d at 450 *citing* 5 WILLISTON, CONTRACTS § 676 (3rd. ed. 1961). It is intended to provide a mechanism by which the party desiring to perform may establish that the other party has breached the contract before its completion, and may seek recompense for that breach. The fundamental purpose for awarding damages for any breach of contract remains the same: to fully recompense the nonbreaching party for its losses sustained because of the breach, not to punish the breaching party. *See Anderson v. Gailey*, 100 Idaho 796, 801, 606 P.2d 90, 95 (1980); *Hirst v. St. Paul Fire & Marine Ins. Co.*, 106 Idaho 792, 683 P.2d 440 (Ct.App.1984). This purpose does not change merely because the doctrine of prevention is invoked to signal a breach.

■ To compensate the builder in building or construction contracts where the owner has breached, the nonbreaching builder has a right to compensatory damages measured by the least amount that will put him in as good a position as would full performance of the contract. 5 A. CORBIN, CORBIN ON CONTRACTS § 1094, at 509 (1964); RESTATEMENT (SECOND) OF CONTRACTS § 344(a), § 347 comment (a) (1981). Application of this principle requires that the court, when determining the amount of damages, account for the savings obtained by the nonbreaching party because he has been relieved of the duty to perform. *Anderson, supra.* As stated by a leading commentator:

Full performance of the construction contract by both parties would have left the building contractor in possession of the full contract price, less the entire cost of construction required of him by the contract. To put him in as good a position as this, in case of a breach by the defendant, it is necessary to let the building contractor get judgment for the full amount of the contract price promised, diminished by the amount that is saved to the building contractor by reason of his not having to complete construction.

5 A. CORBIN, CORBIN ON CONTRACTS § 1094, at 510. *See also* J. CALAMARI & J. PERILLO, THE LAW OF CONTRACTS § 14–28, at 559 (2d ed. 1977) ("Where the property owner breaches a construction contract after the builder has begun construction, the builder is entitled to the unpaid contract price less the amount it would have cost him to complete his performance"); RESTATEMENT (SECOND) OF CONTRACTS § 347 comment (d) (subtracting from the value of the completed contract "any cost or other loss that one has avoided by not having to perform"). Idaho has recognized this rule in *Molyneux, supra*, where the Court described the measure of damages as follows:

In cases where prospective profits may be recovered, the rule for arriving at the prospective profits is to ascertain the difference between the cost of doing the work and what the claimant was to receive for it, *making therefrom a reasonable deduction for the less time engaged and for the release from the care, trouble, risk and responsibility attending a full execution of the contract.*

*Molyneux*, 54 Idaho at 638, 35 P.2d at 658–59 (emphasis added).

■ Here, the jury returned a verdict of $2,956.40 for Mr. Bullock, which amounts to the cost of the completed job. However,

it is undisputed that Mr. Bullock had not completed the project. He testified that the cabinet work could be completed for approximately $1,000 and the defects in the vinyl flooring remedied for $800. The jury, however, failed to deduct these amounts from its award to Mr. Bullock, even though it represents money he saved by not having to finish the project. It is important to distinguish between Mr. Bullock's cost to complete the project pursuant to the contract and the damages sought by Mrs. Sullivan for completely ripping out his work, starting over, and getting a return of what she paid. Here, the question presented is whether the damages awarded to Mr. Bullock were correctly calculated. The jury's award put him in a *better position* than he would have occupied had both parties fully performed under the contract. He should only have been placed in *as good a position* as if both parties had performed. Therefore, the district court erred when it affirmed the award.

■ We also note that there was insufficient evidence presented to support that portion of the award for the $851.40 Mr. Bullock charged for electrical work not originally contemplated in the contract. Mr. Bullock presented no evidence that Mrs. Sullivan ever agreed to this addition to the contract. While Mr. Bullock testified that the electrical upgrade in the kitchen was necessary to bring the remodel up to code and was approved by Mrs. Sullivan, he stated that Mrs. Sullivan gave her final approval to the electrician, Mr. Brad Holton, when Mr. Bullock was not present. Mr. Bullock also stated that at Mrs. Sullivan's request, he stopped building the china hutch and offset the cost of the electrical work with the cost of the hutch. Mr. Holton testified that he explained to Mrs. Sullivan why the work was necessary. He stated that she expressed concern about the cost and never expressly consented to or disapproved the work. He also stated that he had been hired by Mr. Bullock, not Mrs. Sullivan, thus he did not elicit Mrs. Sullivan's approval. Mrs. Sullivan testified that she learned of the electrical work after it was almost completed and had not agreed to the extra charge. She made no comment about requesting an offset of the electrical work for the construction of the china hutch. She testified that she rejected the hutch because it was not being built to her specifications. Whether an offset occurred is tangential to the question of whether Mrs. Sullivan approved an amendment to the contract to allow the electrical work. Mr. Bullock bore the burden of establishing the cost as part of the contract. He failed to meet that burden. Therefore, the $851.40 for extra electrical work must be deducted from the damage award.

■ Next, Mrs. Sullivan argues that the court erred when it found substantial, albeit conflicting, evidence to support the jury's determination that she was not entitled to an award of damages. Mrs. Sullivan requested $19,703 to redo the project plus a refund of the amount she had already paid. Her experts testified that it would cost thousands of dollars to redo the allegedly substandard work already performed by Mr. Bullock, including ripping out his work and starting over. Evidence also was presented, however, to show that the work met industry standards and that minor defects would have been routinely corrected if Mr. Bullock had been allowed to complete the project. The jury's verdict that Mr. Bullock did not breach the contract was supported by substantial, though conflicting evidence. We find no error in the court's determination.

## 2. Denial of Motion for New Trial— Standard of Review

In considering a motion for new trial on the grounds of insufficient evidence under I.R.C.P. 59(a)(6), the trial court is required to undertake a two-part analysis. First, the court is to consider whether the verdict was against the weight of the evidence and if the ends of justice would be served by vacating the verdict. The court then must consider whether a different result would follow in a retrial. *Burggraf v. Chaffin*, 121 Idaho 171, 174, 823 P.2d 775, 778 (1991). The trial court is not merely authorized to engage in this weighing process, it is obligated to

do so. *Sanchez v. Galey*, 112 Idaho 609, 614, 733 P.2d 1234, 1239 (1986). Our role on appeal, however, is not to "re-weigh" the evidence, but is limited to determining whether there was a manifest abuse of discretion by the trial court. *Burggraf*, 121 Idaho at 173, 823 P.2d at 777; *Hilden v. Ball*, 117 Idaho 314, 317, 787 P.2d 1122, 1125 (1990). Absent a showing of manifest abuse of discretion, we will not disturb the lower court's decision on appeal. *Burggraf*, 121 Idaho at 173, 823 P.2d at 777.

*Litchfield*, 122 Idaho at 422, 835 P.2d at 657.

## 2A. Prevention

The trial court concluded that the clear weight of the evidence supported the jury's finding that Mr. Bullock had failed to substantially perform the contract because of the acts or omissions of Mrs. Sullivan. It is apparent that Mrs. Sullivan excluded Mr. Bullock from the home because of the entry by one of his employees, not because of the allegedly poor quality of Mr. Bullock's work, his alleged uncooperative nature, or his failure to abide by the contract. Although restricting access to one's home may certainly be reasonable, completely denying access to those who have contracted to finish a project already begun within the home can be considered to be unreasonable. This is the view taken by the jury, a view which the trial court found to be supported by the evidence. We find no abuse of discretion in that determination.

## 2B. Damages

The trial court concluded that there was substantial, albeit conflicting, evidence to support the award of damages to Mr. Bullock, and the lack of an award to Mrs. Sullivan. Because we have found that the jury erroneously awarded damages to Mr. Bullock without deducting the amount he saved because he was prevented from completing the project, we find that the court erred when it let the damage award stand.

## 3. Jury Instructions and Exclusion of Evidence

Mrs. Sullivan argues that the court erred when it rejected proposed jury instruction number thirty-two, which stated a supporting aspect of the doctrine of prevention.[3] When reviewing jury instructions, the appellate court must determine whether the jury was properly and adequately instructed. *Manning v. Twin Falls Clinic and Hospital*, 122 Idaho 47, 830 P.2d 1185 (1992). In making that determination, we ascertain whether the instructions, when considered as a whole, fairly and adequately present the issues and state the applicable law. *Id.; McBride v. Ford Motor Co.*, 105 Idaho 753, 673 P.2d 55 (1983). Reversible error only occurs when an instruction misleads the jury or prejudices a party. *Id.; Salinas v. Vierstra*, 107 Idaho 984, 695 P.2d 369 (1985).

Mrs. Sullivan's requested instruction accurately states the law. However, it was unnecessary. The issue presented was whether Mrs. Sullivan prevented Mr. Bullock's performance. The court instructed the jury that:

> The failure of the defendant to fully perform a contract is excused if you find that his performance was unreasonably prevented or substantially hindered by the conduct of the plaintiff or her agents. The defendant has the burden of establishing that his performance was hindered or prevented.

**3.** Proposed jury instruction number thirty-two states: "One party by a breach cannot make it impossible, difficult, unfair, or futile for the other party to perform and then invoke the other's alleged non-performance as a defense." During its conference with the attorneys outside the presence of the jury to review the proposed jury instructions, the court disclosed its reluctance to use this requested instruction because—in the court's opinion—the words "un-fair" and "futile" constituted a comment by the court. Accordingly, the court decided instead to modify its own proposed instruction by inserting the words "unreasonably" and "or substantially hindered" and by adding a sentence informing the jury that the burden was placed on Mr. Bullock to establish that his performance was prevented or hindered. As modified, the instruction was given to the jury as number twenty-two, quoted in footnote 2, *supra.*

This instruction adequately presented the issue of prevention as required by the facts of this case.

■■■ Mrs. Sullivan also argues that the court erred when it excluded evidence regarding bills, telephone calls and letters she received from Mr. Bullock's subcontractors who, according to the contract, were supposed to be paid by Mr. Bullock. She asserts that the evidence was relevant to Mr. Bullock's credibility and willingness or ability to perform. The court excluded the evidence as irrelevant, because no liens had been filed by the subcontractors and no causes of action were asserted by Mrs. Sullivan or the subcontractors because of the bills.

Relevant evidence is evidence that has a tendency to make the existence of any fact of consequence to the determination of the action more probable or less probable than it would be without the evidence. I.R.E. 401. The issue in this case was whether Mr. Bullock substantially performed the remodeling project, and whether Mrs. Sullivan prevented his performance. Bills from subcontractors, submitted after the construction and the act of prevention, did not tend to make that performance and prevention more or less probable. Therefore, the evidence was properly excluded.

### 4. Attorney Fees and Costs

■■■ Mrs. Sullivan asserts that the court erred when it determined that Mr. Bullock was the prevailing party and awarded him $508.55 in costs and $3,250 in attorney fees. The trial court is vested with broad discretion to determine the prevailing party in a multiple claim action. I.R.C.P. 54(d)(1); *Jones v. Whiteley*, 112 Idaho 886, 736 P.2d 1340 (Ct.App.1987) *citing International Engineering Co., Inc. v. Daum Industries, Inc.*, 102 Idaho 363, 630 P.2d 155 (1981). It is also vested with discretion to apportion costs and fees, taking into account counterclaims, cross-claims or other multiple issues. *Id.*

Because we determine that Mr. Bullock was awarded an erroneous measure of damages, we find it necessary to vacate the award of attorney fees and remand for consideration of whether Mr. Bullock remains the prevailing party and whether he should be awarded attorney fees. We direct the district court to determine whether Mr. Bullock is entitled to attorney fees under the contract and pertinent Idaho statutes and rules.

### IV. CONCLUSION

This case may have been a prime candidate for mediation or some other type of alternative dispute resolution. Having come to litigation and appeal, however, we conclude that the evidence and law supported the jury's verdict that Mrs. Sullivan prevented Mr. Bullock from completing the contract. Thus, the district court properly denied Mrs. Sullivan's motions for judgment n.o.v. and new trial on that issue. However, we determine that the jury erroneously awarded Mr. Bullock his full contract price, without accounting for the savings he gained because of Mrs. Sullivan's prevention. Thus, the district court erred when it denied Mrs. Sullivan's motions challenging the award. The evidence indicates that Mr. Bullock saved $1,000 by not having to finish the cabinetry and $800 for not having to replace the vinyl floor. He also failed to prove that Mrs. Sullivan assented to the cost of the uncontemplated electrical work for which she was charged $851.40, and credited her appliance payment $26 less than what she actually paid. We find it appropriate to deduct the total of these four figures, $2,677.40, from the jury award of $2,956.40, leaving a reduced judgment of $279 which should be entered in Mr. Bullock's favor. The award of attorney fees is reversed and remanded for reconsideration by the district court. No attorney fees or costs are awarded on appeal.

LANSING and PERRY, JJ., concur.