921 P.2d 190

**Michael Duane CASEY and Debi D. Casey, husband and wife, Plaintiffs–Respondents,**

v.

**Patrick Warren SEVY, Defendant, and**

**Ralph Sevy, Defendant–Appellant.**

No. 21477.

Court of Appeals of Idaho.

June 18, 1996.

Rehearing Denied July 25, 1996.

Petition for Review Denied Aug. 28, 1996.

WALTERS, Chief Judge.

A jury found both Patrick Sevy and his father, Ralph Sevy, liable for damages in an action brought by Michael and Debi Casey following a collision between Patrick's truck and Michael's motorcycle. Ralph Sevy moved for judgment notwithstanding the verdict, or, in the alternative, for a new trial. When the district court denied Ralph's motions, Ralph brought this appeal. We reverse the order, and direct the district court to vacate the judgment entered in favor of the Caseys and to enter judgment for Ralph Sevy.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Patrick Sevy's pickup truck collided with Michael Casey's motorcycle while Patrick Sevy was traveling on a public road on his way to work as a remodeler on a house (the "Hill house") belonging to his father, Ralph Sevy. Michael Casey and his wife, Debi

Casey, brought an action against Patrick and Ralph for injuries sustained as a result of the accident and for loss of consortium. The complaint alleged that Ralph was liable on the theory of *respondeat superior.* Following a jury trial, a special verdict was entered, finding that Patrick was negligent, and awarding damages to Michael Casey in the amount of $278,733, and to Debi Casey in the amount of $50,000. The jury also found that at the time of the accident, Patrick was Ralph's employee and was acting within the scope of his employment. Ralph moved for judgment notwithstanding the verdict (jnov), or alternatively, for a new trial, both of which the district court denied.

Ralph appeals, arguing that Patrick was an independent contractor and not Ralph's employee or agent. He also asserts that even if Patrick had been Ralph's employee, the accident did not occur while Patrick was acting within the scope of his employment. Finally, Ralph contends that the district court erred in refusing to give a requested instruction to the jury which stated that as a general rule, an accident does not arise out of and in the course of employment where the accident occurred while the employee was traveling to or from work.

## II. ANALYSIS

### A. Standards of Review.

Ralph's motion for jnov or a new trial was based on the alleged insufficiency of the evidence, and the failure of the district court to offer the proposed jury instruction. In reviewing a trial court's ruling on a motion for jnov, the appellate court applies the same standard as does the trial court which ruled on it initially, and reviews the decision fully without any special deference to the views of the trial court. *Curtis v. Firth,* 123 Idaho 598, 605, 850 P.2d 749, 756 (1993). We review the record and draw all inferences in favor of the non-moving party to determine if there is substantial evidence to support the verdict. *Young v. State Farm Mut. Auto. Ins. Co.,* 127 Idaho 122, 126, 898 P.2d 53, 57 (1995); *see also Hoglan v. First Sec. Bank of Idaho, N.A.,* 120 Idaho 682, 684, 819 P.2d 100, 102 (1991). The standard we apply to make this determination is whether we can say that there can be but one conclusion as to the verdict that reasonable minds could have reached. *Young, supra.*

In considering a motion for new trial on the grounds of insufficient evidence under I.R.C.P. 59(a)(6), the trial court is required to undertake a two-part analysis. *Sullivan v. Bullock,* 124 Idaho 738, 745, 864 P.2d 184, 191 (Ct.App.1993). First, the court is to consider whether the verdict was against the weight of the evidence and if the ends of justice would be served by vacating the verdict. *Id.* The court must then consider whether a different result would follow in a retrial. *Id.* The trial court is not merely authorized to engage in this weighing process, it is obligated to do so. *Id.* at 745–46, 864 P.2d at 191–92. Our role on appeal, however, is not to "re-weigh" the evidence, but is limited to determining whether there was a manifest abuse of discretion by the trial court. *Id.* at 746, 864 P.2d at 192. Absent a showing of manifest abuse of discretion, we will not disturb the lower court's decision on appeal. *Id.*

Because we conclude that the district court erred in denying Ralph's motion for jnov, we do not reach the court's ruling on the motion for a new trial.

### B. Employee vs. Independent Contractor.

Ralph first argues that there was not substantial evidence to support the jury's determination that Patrick was Ralph's employee. Whether a claimant is an employee or an independent contractor is a factual determination. *Mortimer v. Riviera Apartments,* 122 Idaho 839, 844, 840 P.2d 383, 388 (1992). The current test in the state of Idaho for determining whether a person is an employee or independent contractor is the "right to control test." *Sines v. Sines,* 110 Idaho 776, 777, 718 P.2d 1214, 1215 (1986). The integral question is whether the relationship or the contract gives, or the employer assumes, the right to control the time, manner and method of executing the work of the employee as distinguished from the right merely to require certain definite results in conformity to the contract. *Olvera v. Del's Auto Body,* 118 Idaho 163, 165, 795 P.2d 862,

**16**

864 (1990); *Ledesma v. Bergeson,* 99 Idaho 555, 558, 585 P.2d 965, 968 (1978).

■ Four factors are used to determine whether a right to control exists: (1) direct evidence of the right to control; (2) method of payment; (3) furnishing major items of equipment; and (4) the right to terminate the employment relationship at will and without liability. *Burdick v. Thornton,* 109 Idaho 869, 871, 712 P.2d 570, 572 (1985). When applying the right to control test, the trier of fact must balance each of the elements present to determine their relative weight and importance, since none of the elements in itself is controlling. *Roman v. Horsley,* 120 Idaho 136, 137–38, 814 P.2d 36, 37–38 (1991). Applying the factors of the right to control test, we hold that substantial evidence supported the jury's determination that Patrick was Ralph's employee.

We first analyze whether there was direct evidence of the right to control. In the proceedings below, the Sevys represented that Patrick had his own business doing construction work and that he had several construction projects, of which the Hill house was one. They presented evidence that between February 1993 and May 1993, the hours and days Patrick worked on the Hill house varied. However, the record reveals that during this period of time, Patrick worked "roughly" five days per week and forty hours per week on various projects for his father, including the Hill house. In May of 1993, the month of the accident, Patrick worked exclusively for his father, with the exception of thirty-five hours of labor expended for two other people. This evidence undermines Ralph's assertion that Patrick was an independent contractor engaged in his own construction business, with a number of construction projects for various people, including his father. Instead, the evidence supports a finding that Patrick was his father's employee, hired to do a variety of jobs, including construction on the Hill house.

Ralph also argues that Patrick was his own boss and could "determine how and when the repair and remodelling of the house would be done." However, this argument ignores Patrick's testimony that he received instructions from his father regarding the Hill house on a regular basis. Patrick testified that his father "may have called [him] nearly every day." Moreover, in a deposition read to the jury during Patrick's testimony, the following was elicited:

Q: Any time you did work for your father out at his property, whether it's the old house or the farm or anything, who decided what you would do by way of your work for him?

A: He'd call me up on the phone and he'd say that something else needed done before I could work on the house and I would go and do that. . . .

Q: You said you communicated with your father on a daily basis. Did you keep him posted as to what you were doing and communicate regarding what you were doing on a daily basis?

A: Yes. He'd call me on the phone every morning and discuss what I have done *and explain what needs to be done* and go from there.

(Emphasis added). In explaining the statements made during his deposition, Patrick testified at trial, "That's what I testified to and that is the truth. I have to tell him. If I made a big mess up of something he didn't want at all, then I'd have to go and replace it. I have to keep him posted."

Ralph also stresses Patrick's testimony that he did not consider himself his father's employee, but rather, an independent contractor, and Ralph's testimony that he did not consider Patrick his employee. However, although this testimony carries some weight, a determination of independent contractor or employee status is made by an examination of the actual evidence presented, not by the parties' characterization of their employment status. We conclude that there was direct evidence of Ralph's right to control in this case.

■ We next examine the second factor, the method of payment. "The 'method of payment' test generally refers to whether income and social security taxes are withheld from a person's wages." *Livingston v. Ireland Bank,* 128 Idaho 66, 69, 910 P.2d 738, 741 (1995). Withholding is customary in an employer-employee relationship. *Id.; Peter-*

*son v. Farmore Pump & Irrigation,* 119 Idaho 969, 972, 812 P.2d 276, 279 (1991). In addition, paying an hourly wage or a salary indicates an employer-employee relationship. *Kiele v. Steve Henderson Logging,* 127 Idaho 681, 684, 905 P.2d 82, 85 (1995); *Mortimer, supra.*

Ralph asserts, and the Caseys do not contest, that Ralph did not withhold income taxes or make any deductions for social security from the monies paid to Patrick. This evidence indicates an independent contractor relationship. On the other hand both parties agree that Patrick did not submit bids for any of his work, but was paid an hourly wage by Ralph. These factors indicate that Patrick was Ralph's employee.

With respect to the third factor, the record demonstrates that Ralph provided tools and equipment for Patrick's use on the Hill house. Although Ralph testified that Patrick "used his own tools mostly," he also testified that if Patrick needed some tools and Ralph had them, Patrick would use them. Patrick also testified that some of the tools and equipment used on the Hill house belonged to his father. Additionally, both Ralph and Patrick stated that Ralph owned some of the major equipment used on the Hill house project.

Ralph emphasizes that Patrick determined what materials would be used. However, the evidence produced at trial indicates that Ralph paid for all of the materials, and that Patrick was reimbursed for his out-of-pocket expenses. Patrick testified that when he purchased supplies, he often charged his father's account for them. Thus, while the evidence was not entirely in the Caseys's favor with respect to this factor, there was evidence to support the position that Patrick was Ralph's employee.

Finally, regarding the fourth factor, the right to terminate the employment relationship at will, the Caseys assert, and the record supports, that Ralph could fire Patrick and that Patrick had the right to quit. Ralph does not dispute these facts. However, this factor does not weigh in favor of either party, as our Supreme Court has indicated previously that such agreements are of little assistance in determining the relationship between the parties. *See Livingston, supra; J.R. Simplot Co. v. State Dep't of Employment,* 110 Idaho 762, 765, 718 P.2d 1200, 1203 (1986).

Given our review of the evidence in light of the four factors of the right to control test set forth in *Burdick, supra,* we conclude that substantial evidence supported the jury's verdict that Patrick was Ralph's employee at the time the accident occurred.

### C. Scope of Employment.

At the time of the accident, Patrick was traveling on a public road, going from his parents' home to the Hill house, which was located one-half mile away. In worker's compensation cases, Idaho courts have applied the "coming and going rule," which provides that an employee is ordinarily not in the course of employment when going to or coming from work. *See Andrews v. Les Bois Masonry, Inc.,* 127 Idaho 65, 67, 896 P.2d 973, 975 (1995); *Eriksen v. Nez Perce County,* 72 Idaho 1, 4, 235 P.2d 736, 737 (1951); *Hansen v. Estate of Harvey,* 119 Idaho 357, 358, 806 P.2d 450, 451 (Ct.App.1990). While Idaho appellate courts have not yet applied this rule in cases involving third-party negligence actions, neighboring jurisdictions have. *See e.g., Faul v. Jelco, Inc.,* 122 Ariz. 490, 595 P.2d 1035, 1037 (Ct.App.1979); *Connell v. Carl's Air Conditioning,* 97 Nev. 436, 634 P.2d 673, 674 (1981); *Skinner v. Braum's Ice Cream Store,* 890 P.2d 922, 924 (Okl.1995); *Runyan v. Pickerd,* 86 Or.App. 542, 740 P.2d 209, 210 (1987); *Whitehead v. Variable Annuity Life Ins.,* 801 P.2d 934, 936 (Utah 1989); *Dickinson v. Edwards,* 105 Wash.2d 457, 716 P.2d 814, 819 (1986). We see no reason not to apply the coming and going rule set forth in our worker's compensation cases to cases involving third-party negligence actions brought against employers based on a theory of *respondeat superior.*

However, there are exceptions to the coming and going rule, which include:

incidents where the employee is on the employer's premises in the vicinity of the actual situs of his employment; where going or returning in some transportation facility furnished by the employer; where

traversing the only means of ingress or egress, whether furnished by the employer or by some other party and used with the knowledge and consent of the employer; where doing some particular job for the employer even though the place where the accident occurred and the cause thereof would be common to any traveler; [and] where an employee is traveling to or from the employer's place of business upon some specific mission at his employer's request.

*Eriksen,* 72 Idaho at 4, 235 P.2d at 738.

■ The parties disagree as to whether Patrick was acting within the scope of his employment at the time of the accident. This dispute centers around the purpose of the stop which Patrick made at his parents' residence before going to the Hill house. The issue is whether Patrick went to his parents' house to discuss his work assignment or simply as a social visit—*i.e.,* to deliver radishes to his mother. If the visit was solely social in nature, then the rule regarding transportation to and from work applies—*i.e.,* the accident did not arise out of and in the course of his employment because he was traveling to work. However, if the visit was for the purpose of receiving work-related instructions, the accident may have occurred in the course of Patrick's employment.

The Caseys advance two theories in support of their assertion that the accident arose out of the course of Patrick's employment for Ralph. First, they assert that the incident fell under one of the exceptions to the coming and going rule, namely, that Patrick was traveling from his employer's premises for a specified task as directed by his employer, Ralph. *See Eriksen, supra.* Second, the Caseys contend that if Patrick received work-related instructions from Ralph at his parents' home, then "Patrick's stopping that morning was akin to arriving at work ..." In other words, Patrick was "on the job" from the moment he received the instructions from his father and was not traveling to work at the time of the accident. Thus, under either theory, the accident would not be cov-

ered by the coming and going rule. Both of these theories are predicated on the assumption that Patrick received instructions, or at least stopped for the purpose of receiving instructions, from his father at his parents' house. The question, therefore, is whether there was substantial evidence to support this assumption.

The Caseys assert that on the morning of the accident, "Patrick Sevy, in keeping with his daily practice, checked in with Ralph Sevy for instructions at his home." However, this statement implies that (1) Patrick went to his parents' home for instructions every morning, and (2) that Patrick stopped at his parents' house on the morning of the accident in order to receive instructions from Ralph. There is nothing in the record to support either suggestion. The portion of the transcript which the Caseys cite for their assertion is Patrick's testimony that he telephoned his father each day for instructions, stopped at his father's house "pretty regularly," and that he stopped at his father's house that morning. However, this is not equivalent to the Caseys's representation that Patrick, "in keeping with his daily practice, checked in with Ralph Sevy for instructions at his home."

In fact, there is conflicting testimony regarding the frequency with which Ralph instructed Patrick on remodelling the Hill house. As stated, Patrick testified that his father called him every morning to discuss "what [Patrick] ha[d] done and explain what need[ed] to be done." However, Ralph "absolutely" denied that he spoke to his son on a daily basis to give him instructions. He testified that he only spoke to Patrick two to three times a week, primarily by telephone, that it was often to find out what had been done rather than what would be done, and that he himself knew nothing about building houses.

Even assuming, however, that Ralph and Patrick spoke by telephone on a daily basis, there was no evidence presented that when Patrick stopped by his father's house the morning of the accident, he received instructions from his father.[1] All of the evidence

1. The parties' evidence about the regularity and nature of the contacts between Ralph and Patrick

indicates the contrary. Patrick testified that he received no directions from his father at his father's house on the day of the accident. Galeyne Sevy, Patrick's wife, testified that on the morning of the accident, she had given Patrick radishes to deliver to his mother. Ralph's wife, Betty Sevy, testified that on the morning of the accident, Patrick brought her some radishes and that after he put the radishes in the refrigerator, the following colloquy occurred between the two of them:

> He asked me, "Where's Dad?" I says, "I think he's in the bathroom or else in the bedroom." He says, "Oh, that's okay. I got to go," and he left.

The fact that Patrick proceeded on towards the Hill house after delivering the radishes to his mother and without having talked to his father indicates that Patrick's purpose for stopping at his parents' house was not to receive instructions for work that day. We are aware of the rule of law cited by the Caseys that "an act may be within the scope of employment although done in part to serve the personal purposes of the servant." *Van Vranken v. Fence–Craft*, 91 Idaho 742, 749, 430 P.2d 488, 495 (1967). However, this rule of law does not apply in the instant case, because there is no evidence to suggest that the visit to Ralph's home was for employment purposes.

 The uncontradicted testimony of a credible witness must be accepted by the trier of fact unless the testimony is "inherently improbable, or rendered so by facts and circumstances disclosed at the hearing . . . or impeached by any of the modes known to the law." *Farber v. State*, 107 Idaho 823, 824, 693 P.2d 469, 470 (Ct.App.1984), *citing Dinneen v. Finch*, 100 Idaho 620, 626–27, 603 P.2d 575, 581–82 (1979). *See also Pierstorff v. Gray's Auto Shop*, 58 Idaho 438, 447–48, 74 P.2d 171, 175 (1937). We conclude that all of the relevant testimony indicates that Patrick stopped at his parents' home for a social visit, and that he did not receive work-related instructions from his father while there. This testimony is credible, unrefuted, unimpeached and not inherently improbable. Ac-

cordingly, we are unpersuaded by the Casey's's theories as to why the coming and going rule was inapplicable in this case.

Our inquiries do not end here, however. Even if Patrick did not receive instructions from Ralph at his parents' home the morning of the accident, he may nonetheless have been acting within the scope of his employment had Ralph paid Patrick's travel expenses and compensated Patrick for travel time to and from the Hill house. *See Case of Barker*, 105 Idaho 108, 110–11, 666 P.2d 635, 637–38 (1983) (payment of travel expenses, along with other evidence indicating employer intended to compensate employee for travel time, will justify expanding the course of employment to include going to and from work).

The record does not establish such an intention on Ralph's part. While the Caseys argue that Patrick was "reimbursed for all of his mileage, including his driving as required on the [H]ill house project," this is somewhat of a misstatement. The portion of the transcript which the Caseys cite for this assertion demonstrates only that Patrick was paid for mileage if he was required to haul supplies or go somewhere during the workday to pick up building supplies or tools. Moreover, Ralph testified that he did not pay Patrick for his transportation to and from work and did not do so on the day of the accident. The Caseys also refer to Patrick's testimony that he "charged him [his father] for mileage." However, this statement referred to Patrick's immediately preceding testimony that he was only reimbursed for transportation if he had to make a special trip to town to get additional materials. Moreover, there was no evidence presented that Ralph intended to compensate Patrick for travel time to and from the Hill house.

Based on the foregoing, we conclude that there was not substantial evidence to support the jury's verdict that Patrick was acting within the scope of his employment for Ralph at the time of the accident.

---

with regard to remodelling the Hill house appears to have developed in connection with the issue of whether Patrick was an employee or an independent contractor. With respect to the

coming and going rule applicable to employees, Patrick was never specifically asked during the trial why he stopped at his parents' house on the morning of the accident.

**D. The Proposed Jury Instruction.**

Finally, Ralph asserts that the district court erred in refusing to give the jury his proposed instruction on the coming and going rule. Ralph asserts that his proposed instruction represents the law as set forth in *Eriksen, supra,* and its progeny. However, the Caseys argue that the proposed instruction was an incomplete statement of the law in that it failed to include the delineated exceptions to the general rule as set forth in *Eriksen, supra.* They further argue that the district court properly instructed the jury as to the substance of the scope of employment issue by giving the jury an adapted form of IDJI No. 253.

In light of our decision that substantial and competent evidence did not exist to support the jury's finding that the accident occurred while Patrick was acting within the scope of his employment, we need not address the merits of this issue. Even if the jury had been given the requested instruction, the jury could not reasonably have decided that Patrick was acting within the scope of employment at the time of the accident because the evidence was simply insufficient to support such a conclusion. Therefore, had the Sevys's proposed instruction been given, it would not have affected the outcome of this case.

**III. CONCLUSION**

We hold that substantial and competent evidence existed to support the jury's verdict that Patrick was Ralph's employee, but not that Patrick was acting within the scope of his employment at the time of the accident. Therefore, we conclude that the district court erred in denying Ralph Sevy's motion for judgment notwithstanding the verdict. Accordingly, the judgment entered in favor of the Caseys is vacated and we direct the district court to enter judgment for Ralph Sevy. Costs to the appellant, Ralph Sevy; no attorney fees are awarded.

LANSING, J., concurs.

PERRY, J., dissents, having concluded that the district court did not err in denying either the motion for judgment notwithstanding the verdict or for a new trial, and that the jury's verdict and the district court's judgment should be affirmed.